UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT: WESTERN DISTRICT OF NEW YORK

---

ADAM ARROYO

                                                Index No. 1: 15-CV-00753

                  Plaintiff,

-vs-

                                                **COMPLAINT**

CITY OF BUFFALO, CITY OF BUFFALO POLICE DEPARTMENT, DANIEL DERENDA, COMMISSIONER OF THE CITY OF BUFFALO POLICE DEPARTMENT, CITY OF BUFFALO POLICE DEPARTMENT NARCOTICS DIVISION, in its capacity as a subdivision of the CITY OF BUFFALO POLICE, CITY OF BUFFALO POLICE SPOKESPERSON MICHAEL DEGEORGE, in his official and individual capacity, BUFFALO POLICE NARCOTICS OFFICER DET. JOHN GARCIA in his individual and official capacity, BUFFALO POLICE NARCOTICS OFFICER DET. SGT. BRENDA CALLAHAN in her individual and official capacity, and DET. JOSEPH COOK, In His Official and Individual Capacity.

                                   Defendants.

---

## JURY DEMAND

Trial by Jury on all issues is demanded

## PRELIMINARY INTRODUCTION

1.    This is an action brought pursuant to 42 U.S.C § 1983 and 42 U.S.C § 1985 as applicable to the Fourth and Fourteenth Amendments of the United States Constitution for the unlawful seizure and excessive force used by the defendants surrounding the unjustifiable and unnecessary killing of Plaintiff's 2.5 year-old

canine; aka a small female Pit Bull type dog named "CINDY," on or about June 3rd, 2013.

## PARTIES

2. Plaintiff, Adam Arroyo served in the US. Military, specifically the US Army from 2005-2010. Plaintiff made his way up to a Sargent E-5 upon the time of his honorable discharge in 2010.

3. Plaintiff served a 15-month tour in Iraq and has a combat action badge that is only given to those soldiers who are engaged with the enemy.

4. Plaintiff began to work for Allied Barton Security Services and served as head of security for numerous sites to which he was assigned. Plaintiff worked there until 2014, until beginning a job with Janitronics and is a manager at said company. Currently, Plaintiff runs the cleaning crew and is the on site supervisor at the National Grid location.

5. Plaintiff has never been arrested and has always passed each and every drug test as administered via standard procedure by the US Military and for independent and routine tests as administered to prospective employees by the companies for which Plaintiff has worked and continues to work for.

6. Plaintiff now resides at 197 North Street Apt. 1, Buffalo, New York, 14201, which is located in Erie County, State of New York. At the time of the transactions and occurrences that give rise to this lawsuit, Mr. Arroyo was

residing at 304 Breckenridge Street, upper **REAR Apt.,** in the City of Buffalo, 14213, which is also located within the County of Erie, State of New York.

7. Upon information and belief, the CITY OF BUFFALO, is a municipal corporation duly organized and existing under and pursuant to the laws of the State of New York.

8. Upon information and belief, the City of Buffalo Police Department is under the direct control of the City of Buffalo in the State of New York.

9. Upon information and belief, Defendant Daniel Derenda is the Police Commissioner of the City of Buffalo Police Department.

10. Upon information and belief, the City of Buffalo Narcotics Division is under the direct control of the City of Buffalo, the City of Buffalo Police Department, and the City of Buffalo Police Department Commissioner Daniel Derenda, all located within the State of New York

11. Upon information and belief, the defendant Michael DeGeorge, is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

12. Upon information and belief, the defendants Det. John Garcia, Det. Sgt. Brenda Callahan, and Det. Joseph Cook are employed by the City of Buffalo Police Department and were acting in such capacity during the events that give rise to this lawsuit.

3

## JURISDICTION

13. Plaintiff brings this action to recover damages for the violation of his civil rights under the Fourth Amendment to the United States Constitution, codified at 42 U.S.C. § 1983 and as bestowed upon the states and its citizens through the Due Process Clause by the Fourteenth Amendment of the United States Constitution.

14. The unreasonable killing of a companion animal constitutes an unreasonable "seizure," of personal property under the Fourth Amendment. **Carroll v. County of Monroe**, 712 F.3d 649 (2013).

15. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1332 (federal question) and § 1343 (civil rights).

16. Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

17. Compensatory and Punitive damages are sought pursuant to 42 U.S.C. § 1983.

18. Costs and Attorney's fees may be awarded pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. Rule 54.

19. Supplemental Jurisdiction for the related state claims is invoked pursuant to 28 U.S. Code § 1367(a), as the attached claims form part of the same case and controversy under Article III of the United States Constitution.

20. As mandated by the Supremacy Clause, in relations to actions brought pursuant to 42 U.S.C. § 1983, plaintiff does not have to comply with Municipal Law Section 50-e with regard to filing a Notice of Claim with regard to Federal Causes of Action.

21. However, as related to the supplemental New York State Causes of action, on or about the 12th day of June, 2013, a Notice of Claim was served on behalf of the plaintiff upon the City of Buffalo and the City of Buffalo Police Department, in duplicate, which Notice of Claim sets forth the name and post office address of Adam Arroyo, the plaintiff, the name and post office address of his previous attorneys, the general nature of the claim, the time when, the place where, and the manner in which the claim arose, together with the items of damages and injuries then known to exist, and said Notice of Claim was served upon the above-referenced parties within ninety (90) days of the date upon which the claim arose.

22. At all relevant times, Defendants Garcia, Callahan, and Cook and the City of Buffalo Police Department Narcotics Division were discharging their duties

in the scope of their employment by the City of Buffalo Police Department and the City of Buffalo, albeit in a brutal and sadistic manner.

23. At all relevant times, Defendants Derenda and DeGeorge were discharging their duties in the scope of their employment by the City of Buffalo Police Department and the City of Buffalo, albeit in an unethical and dishonest manner.

24. At least thirty (30) days have elapsed since the service of the notice of claim, as aforesaid, and the above-referenced defendants have failed and neglected to adjust or pay the said claim.

25. Furthermore, a state claim was filed at the Erie County Clerk's Office in Erie County Court on July 17, 2013, and assigned an index number of 2122/2013, thereby preserving the right to file said state claims in Federal Court.

## VENUE

26. This action properly lies in the Western District of New York, pursuant to 28 U.S.C. § 1343(3) because the claims arose in this judicial district and the defendants reside in and /or do business in Erie County.

## FACTUAL BACKGROUND

27. Plaintiff obtained a small, wonderfully friendly, intelligent, and obedient female Pit Bull puppy, aka Cindy, in the early stages of 2011 or late stages of 2010. Plaintiff owned and possessed said dog until June 3, 2013 and considered the animal his best friend.

28. On or about June 3, 2013, in the afternoon, Defendants executed a search warrant at Plaintiff's apartment, in direct conflict with the search warrant, signed by the Honorable Judge Craig Hannah on apparently May 8th, 2013. The search warrant authorized the Buffalo Police Department and the City of Buffalo Police Department Narcotics Division, specifically Buffalo Police Narcotic Detectives John Garcia and Brenda Callahan, to execute a search warrant at 304 Breckenridge, Buffalo, New York, the upper apartment. Plaintiff lives at the upper rear apartment. Furthermore, if the warrant was signed on May 8th, as it appears to be, then the execution of the search warrant was stale as defined by § 690.30(1) of the Criminal Procedure Law.

29. Upon information and belief, based in part on the Buffalo Police Departments' own records and Buffalo City court papers, the upper apartment was inhabited by one Tori Rockmore. Tori Rockmore is a convicted felon. Furthermore, upon information and belief, on April 17, 2013, a mere month and a half prior to the Buffalo Police Department, specifically Police Officers Karen

Franco and Elizabeth Baker, charged Rockmore with the possession and intent to sell crack cocaine found in his residence.

30. On the day in question, numerous civilians who were on Breckenridge Street at the time the search warrant was executed advised Buffalo Police Narcotics that they had the wrong apartment just prior to the Buffalo Police's execution of both the search warrant and the harmless dog, aka Cindy who had lay tethered to a sink inside the Plaintiff's residence.

31. Buffalo Police ignored those warnings and continued in their reckless and wayward manner, kicking in the door to Plaintiff's apartment. Upon entry, they encountered Cindy, who was tethered to a sink where she can lay on the cool hardwood floor. Plaintiff used to leave Cindy in that position as a matter of habit and routine when he went to work, as Cindy sometimes chewed his shoes and other such items when Plaintiff wasn't present. Many witnesses can speak to this habit and routine, and Plaintiff was working at his job as a security guard at the time the Defendants executed both a search warrant at his residence and his dog therein.

32. Detective Joseph Cook, as he's done roughly 100 times throughout his career as a Buffalo Police Officer and Detective, shot and killed Cindy as she was tethered to the sink. Physical evidence proves she was shot at the location, while tied, from blood spatters depicted in photos to the leash itself that lay by the sink.

33. Buffalo Police, as is their habit for these occasions, then called upon Buffalo Animal Control to assert dominion and control over the deceased animal, as opposed to using them to control the animal while still alive.

34. It is believed Buffalo Police do this as a matter of habit because there is of course no desire to save the life of any animals in the neighborhoods they are sworn to protect and serve, but rather instead to use the Animal Control Department to help cover up the unjustifiable and brutal slayings of such companion animals such as Cindy by tampering with the body and other physical evidence.

35. Therefore, as a matter of course, in this situation and in hundreds of others through the years, the Buffalo Police Department converts a vibrant and healthy dog into a deceased and bullet ridden one. They then have Buffalo Animal Control pick up the body and transport the body to the SPCA where the body is incinerated. In this case, Plaintiff was able to track down the canine's body, though the evidence had been tampered with. This conspiracy was an unlawful conversion of Plaintiff's property and the spoliation of evidence prevents any kind of medical examination of said animal that would further establish the brutal and unjustifiable slaying of said animal.

36. Despite all the above-evidence being known to the Buffalo Police Department, Defendants' Derenda and DeGeorge fraudulently maintained that the Buffalo Police Department had the correct address and that Plaintiff

therefore, by logical extension, was in fact a drug dealer whose activities indirectly led to his dog's demise.

37. This finding was a result not of an investigation into whether the Buffalo Police Conduct was lawful or whether the shooting of the dog was unjustified, which would constitute Aggravated Animal Cruelty, but rather a cover up that all Defendants mislabeled as an investigation.

38. Defendant Cook immediately escalated to deadly physical force... against the dog as opposed to using a less lethal method, which is standard procedure for the Buffalo Police Department and especially its Narcotics Unit.

39. Defendants, while still acting under the color of state law, then destroyed the potential of recovering any forensic evidence by having Cindy's body disposed of without the consent of the Plaintiff and without providing Plaintiff the opportunity to consult with an attorney regarding the demise of his beloved animal.

40. Defendants, while acting under the color of state law, violated Plaintiff's Fourth Amendment and Fourteenth Amendment right to be free against unreasonable searches and seizures in that defendants unreasonably and unjustifiably interfered with and deprived Plaintiff of his possessory and property interests in his dog "Cindy," when Cindy was shot needlessly while Plaintiff was working. Plaintiff did not give permission to kill Cindy and was devastated by the unnecessary slaying of said companion animal.

41. Cindy was on her own property at the time of Defendants' unlawful intrusion, and presented no imminent threat, and certainly no imminent threat that could remotely justify lethal force after no other lesser means of force were attempted. Thereby, the force used during the seizure was excessive and in violation of the Plaintiff's right to be protected against unlawful searches and seizures.

42. Defendants Garcia, Callahan, and Cook acted unreasonably as judged objectively by the prospective of a reasonable police officer, and not the subjective intent of said Officers, though it is evident that even the subjective intent of said Officers was to shoot first and not ask any questions later.

43. Plaintiff's interest in being free from such unreasonable searches and seizures and being free from unreasonable interference with the companionship he had with his dog Cindy outweigh any interest defendants may have to justify their interference with Plaintiff's property rights in the ownership of said dog or to gratuitously kill the dog out of sheer sociopathic enjoyment.

44. The unauthorized disposal of Cindy's body, in conjunction with the libelous fraud perpetuated by the Defendants to the public in their branding of Plaintiff as a drug dealer demonstrates both consciousness of guilt on the part of the defendants, and an effort to cover up their civil rights violations against the Plaintiff.

**First Cause of Action for violations of the Fourth and Fourteenth Amendment as per 42 U.S.C. § 1983 against The City of Buffalo, the City of Buffalo Police Department, the City of Buffalo Police Department Narcotics Division, City of Buffalo Police Commissioner Daniel Derenda, in his official and individual capacity, City of Buffalo Police Officers Detective John Garcia, Detective Brenda Callahan, and Detective Joseph Cook in their Official and Individual Capacities:**

45.   Plaintiff, ADAM ARROYO repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

46.   On or about June 3, 2013, Defendants Garcia, Callahan, and Cook, and the Buffalo Police Department Narcotics Division, came to Plaintiff's former residence and entered the residence without permission of the Plaintiff. They executed a search warrant that was defective on its face, as the warrant was stale pursuant to § 690.30(1) of the Criminal Procedure Law. Furthermore, the search warrant clearly designated a different location and a different person than that of the Plaintiff, namely the target of the warrant was a 5'10 190 lb. Black male between the ages of 25-30 years of age, who lived in the Upper Apartment. Plaintiff is a Hispanic male, taller and heavier than the suspected target, who lived in the upper rear apartment. Prior to June 3, 2013, Plaintiff had numerous conversations with the landlord of 304 Breckenridge, alerting her to the drug dealing that was taking place in the upper apartment.

47. Despite the above-referenced facts, Defendants somehow executed the search warrant at the wrong address, trashed Plaintiff's property, leaving the premises unsecured, and Detective Cook brutally shot and killed Plaintiff's dog Cindy, who was tethered to the sink. They then perpetuated a libelous fraud to the public through the media, which they continue to this day, that the Plaintiff's residence was a residence used to sell drugs. Said assertion is maintained by the Defendants despite all evidence which proves the contrary assertion.

48. Some particulars of said evidence is the fact:

    - The target of the warrant was of a different race.
    - No drugs were found in Plaintiff's residence,
    - Civilians were telling Defendant's that they had the wrong address both before and after the execution of both the warrant and dog.
    - The address listed on the warrant differed from Plaintiff's residence and did in fact belong to an individual matching the description of the target of the search warrant who was engaged in drug activity.

49. The above-referenced conduct demonstrates that the Defendants conspired to and did deprive the Plaintiff of his liberty as would shock the conscious in violation of his rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.