UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ADAM ARROYO,

                                    Plaintiff,

        v.

THE CITY OF BUFFALO,
CITY OF BUFFALO POLICE DEPARTMENT,
DANIEL DERENDA, Commissioner of the
City of Buffalo Police Department,
DET. JOHN GARCIA, Buffalo Police Narcotics
Officer,
DET. SGT. BRENDA CALLAHAN, Narcotics Officer,
CITY OF BUFFALO POLICE DEPARTMENT
  NARCOTICS DIVISION,
DET. JOSEPH COOK,
MICHAEL DeGEORGE, City of Buffalo Spokesperson,

                                    Defendants.
_____

**DECISION
and
ORDER**
--------------------------
**REPORT
and
RECOMMENDATION**


**15-CV-753A(F)**

APPEARANCES:          MATTHEW A. ALBERT, ESQ.
                      Attorney for Plaintiff
                      254 Richmond Avenue
                      Buffalo, New York  14222

                      TIMOTHY A. BALL
                      CORPORATION COUNSEL, CITY OF BUFFALO
                      Attorney for Defendants
                      MAEVE E. HUGGINS,
                      DAVID M. LEE,
                      CHRISTOPHER R. POOLE,
                      Assistant Corporation Counsels, of Counsel
                      1112 City Hall
                      65 Niagara Square
                      Buffalo, New York   14202


        This case was referred to the undersigned by order of Hon. Richard J. Arcara

filed November 23, 2015 (Dkt. 7) for all pretrial purposes.  The matter is presently

before the court on Defendants' motion for judgment on the pleadings, summary

judgment, to disqualify Plaintiff's counsel and for a protective order filed October 31,

2016 (Dkt. 15), and on Plaintiff's motion to amend the Scheduling Order filed January

12, 2017 (Dkt. 23).

## BACKGROUND

Plaintiff initiated this action pursuant 42 U.S.C. §§ 1983, 1985, and 1988 on

August 22, 2015 by filing the Complaint alleging violations of Plaintiff's Fourth and

Fourteenth Amendment rights involving an alleged mistaken entry into Plaintiff's

apartment while executing a search warrant by Defendants Garcia, Callahan and Cook.

the unnecessary shooting of Plaintiff's pet dog, a female pit bull named Cindy, by

Defendant Cook, and a seizure of various of Plaintiff's personal property.  Defendants'

motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) ("Rule 12(c)") or

for summary judgment pursuant to Fed.R.Civ.P. 56, to disqualify Plaintiff's counsel, and

for a protective order pursuant to Fed.R.Civ.P. 26(c)(1)(D) ("Rule 26(c)(1)(D)"), was filed

December 19, 2016 (Dkt. 15) ("Defendants' Rule 12(c) motion," Defendants' Summary

Judgment motion," Defendants' motion to disqualify," "Defendants' motion for protective

order," collectively "Defendants' motions") together with Defendants' Statement of

Undisputed Facts (Dkt. 15-1) ("Defendants' Statement"), Declaration of Christopher R.

Poole, Assistant Corporation Counsel (Dkt. 15-2) ("Poole Declaration") and a

Memorandum of Law in Support of Defendants' Motion (Dkt. 15-3) ("Defendants'

Memorandum") attaching exhibits A – P (Dkt. 15-5 - 20) ("Defendants' Exh(s). __").  On

December 19, 2016, Plaintiff filed a Memorandum of Law In Opposition to Defendants'

Motion (Dkt. 21) ("Plaintiff's Response") attaching exhibits A – P (Dkt. 21-1 – 20)

("Plaintiff's Exh(s). __").  Defendants' Reply Memorandum of Law In Support of

Defendants' Motion was filed January 9, 2017 (Dkt. 22) ("Defendants' Reply").  Plaintiff's

Sur-Reply Memorandum of Law In Response To Defendants' Motion To Dismiss

Complaint was filed January 31, 2017 (Dkt. 27) ("Plaintiff's Sur-Reply").  On January 12,

2017, Plaintiff moved for an extension of time to complete discovery (Dkt. 23)

("Plaintiff's motion to Amend the Scheduling Order"), attaching in support exhibits A

through G (Dkt. 23-1 through 23-7).  By order filed January 25, 2017 (Dkt. 26), the court

requested Defendants Cook, Callahan and Garcia file supplemental affidavits in further

support of Defendants' motion to disqualify Plaintiff's counsel ("the Order").   In

compliance with the Order, on February 13, 2017, Defendants filed the Declaration of

Maeve E. Huggins, Assistant Corporation Counsel (Dkt. 28), attaching exhibits A

(Affidavit of Detective John C. Garcia), B (Affidavit of Detective Joseph Cook), and C

(Affidavit of Detective Sergeant Brenda Callahan).  Oral argument was deemed

unnecessary.

# FACTS[1]

On June 3, 2013, Plaintiff resided at 304 Breckenridge Street, Buffalo, New York

("304 Breckenridge"), in an upper rear apartment ("Plaintiff's apartment").   At some time

prior to June 3, 2013,[2] a search warrant ("the search warrant") was issued by a Buffalo

City Court Judge for narcotics located in an upper apartment at 304 Breckenridge

without a further particularized reference to an upper front apartment ("the front

apartment") then occupied by one Kiona Thomas ("Thomas"), whose brother, Tori

Rockmore ("Rockmore"), had been arrested and charged with narcotics sales on April

---

[1]   Taken from the papers and pleadings filed in this action.
[2]   The record does not include a copy of the warrant nor the application, however, Plaintiff asserts and
Defendants do not dispute it was issued on May 8, 2013.

17, 2013 while staying at Thomas's front apartment at 304 Breckenridge.  Rockmore

then resided at 69 Wheatfield Street, North Tonawanda, New York, but occasionally

stayed in Thomas's front apartment which may be accessed through a front door at 304

Breckenridge.  At that time, Plaintiff's apartment could be accessed only through a rear

side door at 304 Breckenridge.

Upon entering Plaintiff's apartment, one first enters Plaintiff's living room in which

a twin bed and Plaintiff's belongings were located, and then passes into Plaintiff's

kitchen where Plaintiff's pet dog, a female pit bull terrier named Cindy, which Plaintiff

had two years earlier purchased for $150, was tethered to the cupboard or sink on a six

foot chain[3] when Plaintiff was not home.  At some time on the evening of June 3, 2013,

Plaintiff received notice that Buffalo Police had executed the search warrant for

narcotics at his apartment and during the execution of the search warrant had shot and

killed Cindy.  Defendants Garcia, Callahan and Cook executed the warrant and

Defendant Cook shot Plaintiff's dog with a shotgun which Plaintiff alleges constitutes

excessive force and an unconstitutional seizure in violation of the Fourth and Fourteenth

Amendments.  As a result of the shooting of Plaintiff's dog, Defendants' removal and

later destruction of the dog without Plaintiff's permission, and Defendants' public

misrepresentations that narcotics trafficking had occurred at Plaintiff's apartment,

Plaintiff suffered severe mental distress for which Plaintiff required treatment.  Plaintiff

also asserts Defendants Garcia, Callahan and Cook unlawfully seized an air rifle,

electronic games, and large hunting knife, and damaged several items of Plaintiff's

property during their execution of the warrant.  Plaintiff also alleges Defendants City of

---

[3]  The length of the chain tether is not specifically alleged in the Complaint; it appears in Plaintiff's
testimony given in an examination pursuant to N.Y. Gen. Mun. Law § 50-h in connection with Plaintiff's
Notice of Claim against the City.  *See* Dkt. 15-6 at 50.

Buffalo, City of Buffalo Police Department, Police Commissioner Derenda, and the City

of Buffalo Police Narcotics Divisions maintain a policy of condoning the unnecessary

shooting of dogs during search warrant executions, particularly during narcotics

investigations, and also engage in systematic cover-ups of the facts of such shootings.

Plaintiff further claims Defendants engaged in perpetuating a fraud on the public and

media by wrongfully maintaining that Plaintiff's residence was used to facilitate narcotics

trafficking.  Plaintiff alleges Defendants City, Police Department and Commissioner

Derenda fail to adequately train, supervise and regulate police officers in the proper

procedures for dealing with dogs during searches  in order to avoid unnecessarily

shooting the animals with deliberate indifference to the resultant constitutional violations

alleged by Plaintiff.

Plaintiff asserts nine causes of actions based on 42 U.S.C. § 1983 ("§ 1983"), 42

U.S.C. § 1985 ("§ 1985"), and New York state tort law as follows:  (1) a § 1983 claim

against Defendants City of Buffalo, the Buffalo Police Department, the Buffalo Police

Department Narcotics Division, Police Commissioner Derenda in his official and

individual capacity ("the City Defendants"), and Detectives Garcia, Callahan and Cook

("the Individual Defendants") in their official and individual capacities, based on the

unlawful execution of the search warrant in Plaintiff's apartment, the staleness of the

search warrant in violation of state law, the unjustified seizure and destruction of

Plaintiff's dog and other personal property in violation of the Fourth Amendment and in

the course of a conspiracy to violate Plaintiff's constitutional rights in a way that would

"shock the conscience" thereby also depriving Plaintiff of his liberty protected by the

Fourteenth Amendment, Complaint ¶¶ 49, 52 ("First Claim"); (2) a § 1983 claim based

on the alleged failure of the City Defendants to properly train and supervise City of

Buffalo police officers in the reasonable use of force against pet dogs while executing

search warrants directed to private premises such as Plaintiff's apartment, *id.* ¶¶ 56-60

("Second Claim"); (3) a § 1983 claim against the City Defendants and the Individual

Defendants based on excessive force in the execution of the search warrant at

Plaintiff's apartment and the resulting seizure of Plaintiff's property including destruction

of Plaintiff's pet dog in violation of the Fourth Amendment and, based on Defendants'

conduct that "shocks the conscience," in violation of the Fourteenth Amendment, *id.*, ¶¶

64-66 ("Third Claim"); (4) an intentional infliction of mental distress claim against City

Defendants, Michael DeGeorge acting as City Defendants' spokesman in connection

with the matter, ("Defendant DeGeorge") and the Individual Defendants based on the

killing of Plaintiff's pet dog "in the presence of Plaintiff," and a "subsequent cover up,"

*id.,* ¶¶ 71, 72 ("Fourth Claim"); (5)  alleged intentionally and unjustifiably damaging

Plaintiff's personal property including his pet dog against both the City and the Individual

Defendants*, id.*, ¶¶ 64-75 ("Fifth Claim"); (6) a negligence claim against City and the

Individual Defendants based on the failure of City Defendants to properly train police

officers, provide protocols for the interaction of police officers with animals in the course

of their official duties particularly in the execution of narcotics search warrants, to avoid

the use of lethal force against such animals constituting animal cruelty, and the

negligent hiring and entrustment of Defendant Cook to act as a police officer in using

force against pet dogs, *id.*, ¶ 77 ("Sixth Claim"); (7) a § 1983 claim against the City

Defendants and the Individual Defendants based on the conduct of the Individual

Defendants in wrongfully executing a stale search warrant at Plaintiff's apartment in

violation of Plaintiff's Fourth and Fourteenth Amendment rights, *id.*, ¶¶ 79-80 ("Seventh Claim"); (8) a § 1985 claim against City Defendants and Officer Brian J. Gummo in the unauthorized disposition of Cindy's remains in violation of Plaintiff's rights under the Due Process, Equal Protection and Privileges and Immunities Clauses, *id.*, ¶ 82 ("Eighth Claim"); and (9) defamation, specifically slander, against City Defendants, Defendant DeGeorge and the Individual Defendants based on the Defendants' public misrepresentation made with actual malice that Plaintiff was the sole occupant of "his residence, *was* selling drugs and that [Plaintiff's][4] activities . . . led to his dog being killed." *Id.*, ¶ 85 ("Ninth Claim").   Plaintiff also seeks punitive damages against Defendant Cook, compensatory damages, and costs pursuant to § 1988.

## DISCUSSION

1.    <u>Defendants' Rule 12(c) Motion</u>.

Defendants' motion pursuant to Rule 12(c) for judgment on the pleadings is subject to the same analysis applied to a Rule 12(b)(6) motion to dismiss  *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (stating a Rule 12(c) motion employs "'the same . . . standard applicable to dismissals pursuant to Fed.R.Civ.P. 12(b)(6).'" (quoting *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 529 (2d Cir. 2006) (ellipses in original))).  On a motion under Rule 12(b)(6) or Rule 12(c), the court's consideration generally is limited to the four corners of the complaint or, if matters outside the pleadings are considered, such motion must be converted to one for summary judgment with notice of the conversion given to the non-movant.  *See* Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and

---

[4]   Bracketed material added unless indicated otherwise; italics in original.

not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). "In ruling on a 12(b)(6) motion, and thus on a 12(c) motion, a court may consider the complaint as well as 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.'" *Kalyanaram v. American Ass'n of University Professors at New York Institute of Technology, Inc.*, 742 F.3d 42, 44 n. 1 (2d Cir. 2014) (quoting *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (bracketed material in original)). "Moreover, 'on a motion to dismiss, a court may consider . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (bracketed material in original)).

In considering a Rule 12(b)(6) or a Rule 12(c) motion, the Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679); *see also Vega v. Hempstead Union Free School*

*District*, 801F.3d 72, 86 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

To survive a motion to dismiss or for judgment on the pleadings, *Martine's Service Center, Inc. v. Town of Walkill*, 554 Fed.Appx. 32, 34 (2d Cir. Jan. 30, 2014); *Johnson*, 569 F.3d at 43, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face"). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

A.     City Defendants

1.     Plaintiff's First, Second, Third, and Seventh Claims
Alleging § 1983 Claims.[5]

---

[5] Defendants assert that as Plaintiff's First through Eighth Claims arise from Plaintiff's allegations of a violation of his Fourth and Fourteenth Amendment rights, such claims should be dismissed against the City of Buffalo and its Police Department because § 1983 does not incorporate the doctrine of *respondeat superior*. *See* Dkt. 15-3 at 3-4; Dkt. 22 at 4-5. However, only Plaintiff's First, Second, Third, and Seventh Claims assert a § 1983 claim relying on an alleged Fourth and Fourteenth Amendment violations by Defendants which are the subject of Defendants' motion. As Defendant DeGeorge is not referenced in Plaintiff's First, Second, and Third Claims, there is no reason to consider dismissal of these claims as to him. All Defendants, including DeGeorge, are also named in Plaintiff's Fourth Claim alleging a state law tort of intentional infliction of mental distress; only Defendants City of Buffalo Narcotics Division, Commissioner Derenda, Defendant DeGeorge and the Individual Defendants are named in Plaintiff's Ninth Claim alleging slander. However, Defendants' Rule 12(c) motion is not directed to any of Plaintiff's state law claims. Thus, these latter claims should remain for the purposes of further proceedings in the case.

It is well-established that a § 1983 claim against a municipality cannot be maintained unless a plaintiff establishes that the alleged deprivation of plaintiff's federal constitutional rights results from a "'governmental custom, policy or usage of the municipality.'" *Boans v. Town of Cheektowaga*, 5 F.Supp.3d 364, 373 (W.D.N.Y. 2014) (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) ("*Monell*"))). "'Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee.'" *Id.* Moreover, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality . . . plaintiff must also demonstrate that through its deliberate conduct, the municipality was the moving force behind the injury alleged.'" *Boans*, 5 F.Supp.3d at 373 (quoting *Bd. of Cty. Comm'rs of Bryan Cty, Okla.* v. *Brown*, 520 U.S. 397, 404 (1997)). "As such, municipal liability may be found 'when the execution of a [municipal] government's policy or custom . . . inflicts the injury that the government as an entity is responsible for under § 1983.'" *Id.* at 373-74 (quoting *Monell*, 436 U.S. at 691). In order for *Monell* liability to attach based on a failure to train employees, it must be plausibly alleged that a municipality's failure to train its employees or the "policies or customs it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Such liability may also be predicated on whether the municipality's failure to supervise or provide proper training was "so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of plaintiff's constitutional rights."

Mere allegations are insufficient to establish such actionable policies or practices. *See Mikulec v. Town of Cheektowaga*, 909 F.Supp.2d 214, 228 (W.D.N.Y. 2012) (citing

*Bd. of Comm'rs of Bryan Cty., Okla.*, 520 U.S. at 404).  Additionally, § 1983 relief is not available against a municipal police department which "as an administrative arm" of the municipality "cannot be sued." *Mikulec*, 909 F.Supp.2d 227 n.9 (citing *Hall v. City of White Plains*, 185 F.Supp.2d 293, 303 (S.D.N.Y. 2002)); *see also Steele v. Rochester City Police Dep't.*, 2016 WL 1274710, at *2 (W.D.N.Y. Apr. 1, 2016) (citing *Mulvihil v. New York*, 956 F.Supp.2d 425, 427 (W.D.N.Y. 2013)).  Further, liability under § 1983 must be based on the personal involvement of a defendant in the alleged constitutional violation.  *See Spavone v. New York State Dep't. of Correctional Services*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  Finally, supervisory liability under § 1983 also "depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*."  *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)).  "'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983." *Hernandez*, 341 F.3d at 144-45 (quoting *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)).  Such supervisory liability under § 1983 "can be shown in one or more of the following ways:  (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."  *Hernandez*, 341 F.3d at 145 (citing *Colon*, 58 F.3d at 873).

Here, City Defendants maintain Plaintiff's allegations do not plausibly allege that

the entry into Plaintiff's apartment by the Individual Defendants and consequent

destruction and disposal of Plaintiff's dog and the seizure of Plaintiff's other property

were caused by a municipal policy or usage, *i.e.,* practice created, maintained or

condoned by City Defendants.  Defendants' Memorandum at 10.  Plaintiff argues that

the Complaint sufficiently alleges that because Plaintiff's dog was tethered to a sink

within Plaintiff's apartment, the dog posed no threat to the Individual Defendants, and

lethal force by Cook was therefore unnecessary resulting in an unconstitutional seizure

of the animal.  Plaintiff's Response at 13-14 (citing Complaint ¶ 30-32).  *See Carroll v.*

*County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (*per curiam*) (*"Carroll"*)

('unreasonable killing of a companion animal constitutes unconstitutional 'seizure' of

personal property under Fourth Amendment") (citing cases).[6]  To establish, for purposes

of Rule 12(c), that the Complaint plausibly alleges the existence of a policy or practice

of the unjustified shooting and disposal of a dog during a mistaken Buffalo police drug

raid such as Plaintiff alleges, Plaintiff asserts that (1) without justification Defendant

Cook shot Plaintiff's dog during an illegal search of Plaintiff's apartment as part of a

narcotics investigation in furtherance of a search warrant stale under state law and

which failed to sufficiently described the target premises (Complaint ¶ 21), (2) that Cook

has routinely, estimated by Plaintiff at 100 instances, shot other dogs under similar

---

[6]   Although Plaintiff's First, Second, Third, Seventh and Eighth Claims also assert the Fourteenth
Amendment as a basis for Plaintiff's § 1983 and § 1985 claims, it is well-established that where a specific
constitutional amendment provides an "'explicit textual source of constitutional protection against a
particular source of government behavior,'" that amendment "not the more generalized notion of [14th
Amendment] 'substantive due process,' must be the guide for analyzing the claims."  *Albright v. Oliver*,
510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (unless otherwise
indicated bracketed material added).  Accordingly, as Plaintiff's § 1983 and § 1985 claims are grounded
primarily on the protections of the Fourth Amendment, Plaintiff's assertions of relief based on substantive
due process under the Fourteenth Amendment are not cognizable in this action, and, as such, will not be
further addressed.

circumstances, *i.e.*, while the dog was tethered or for other reasons posed no threat to police during similar drug raids (*id.* ¶ 32), (3) other Buffalo police officers in drug raids similar to the instant case routinely shoot and improperly dispose of dogs present on the premises to be searched (*id.* ¶ 35), and (4) the "sociopathic" killing and disposal of Plaintiff's dog by Cook resulted from the City Defendants' "customary practices" to destroy evidence of such unconstitutional conduct of which Individual Defendants' violations were a "part" (*id.* ¶ 56).  Thus, fairly read and drawing all inferences favorable to Plaintiff, the Complaint broadly asserts the existence of the prerequisite municipal policy or practice based solely on Plaintiff's assertion that in the course of executing defective narcotics warrants Cook has repeatedly killed without justification and, along with other police officers, improperly disposed of dogs during drug raids within the City of Buffalo, and that other Buffalo police officers routinely engage in similar conduct.

An allegation of constitutional wrongdoing by one police officer, however, does not rise to the level that such wrongdoing is the product of a policy or practice created by the municipality or a senior policy-maker like Commissioner Derenda or that the alleged constitutional violations were the result of such a policy or practice.  *See DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy" (citing *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991))).  Although Plaintiff asserts Defendant Cook has engaged in similar unjustified dog shootings while engaged in drug raids "roughly 100 times throughout his career," Complaint ¶ 32, because this allegation does not specify that Cook's and other prior dog shootings by Buffalo police, as Plaintiff alleges, were all unreasonable under

the circumstances in which they occurred, including whether the dogs were untethered

and had not attacked Cook or the other officers, without any basis to believe such

shootings were unnecessary and thus unreasonable in the circumstances, it is

insufficient to plausibly attribute such alleged shootings to a municipal policy or practice.

It is the unreasonable use of lethal force against a dog under all the circumstances that

establishes the unconstitutional seizure and violation of the Fourth Amendment, *Carroll*,

712 F.3d at 651-52, and absent the plausible occurrence of such repeated constitutional

violations there can be no municipal liability against City Defendants based on a policy

or usage required by *Monell*.  *Segal*, 459 F.3d at 219.

Plaintiff contends that Cook's alleged habit of killing dogs, particularly pit bulls,

during narcotics investigations is based on "documentary evidence," Dkt. 21 at 13, as is

Plaintiff's estimate based on twenty-six instances allegedly involving Cook during a

three-year period, *id.* at 13-14; however, significantly, the Complaint includes no

references to such prior instances nor that in each such instance the circumstances

showed the shooting to be unreasonable, *i.e.*, that the dog did not pose a threat to the

officers such that lethal force was unjustified which conceivably could constitute an

unlawful seizure.  *See Carroll*, 712 F.3d at 651-52.  Nor does the Complaint reference

the documentary evidence to which Plaintiff refers, and arguments presented in legal

memoranda cannot substitute for a pleading sufficient to oppose a Rule 12(c) motion.

*See Associated Press v. All Headline News Corp.*, 608 F.Supp.2d 454, 464 (S.D.N.Y.

2009) ("conclusory assertions in a memorandum of law are not a substitute for plausible

allegations in a complaint"). Plaintiff also relies on an August 4, 2016 article in a free

local newspaper describing examples of police unnecessarily shooting dogs during drug

raids in Buffalo as supporting Plaintiff's assertion that such unnecessary shootings were a Buffalo police "policy."  *See* Plaintiff's Response at 14 (referencing Plaintiff's Exh. N at 4).  However, the Complaint makes no mention of the article, *see* Complaint (*passim*), and does not attempt to identify the source of such a generalized assertion or attribute it to City Defendants, despite the fact that information in newspaper articles may provide support for meeting the plausibility standard.  *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 n. 17 (7th Cir.) (plaintiff may rely in opposition to Rule 12(b)(6) motion on newspaper article attached to complaint not as evidence but to "illustrate facts the party could be prepared to prove at the appropriate stage of proceedings"), *reh'g denied*, 807 F.3d 839 (7th Cir. 2015), *cert. denied*, __ U.S. __, 136 S. Ct. 1607 (2016); *Hunter v. City of New York*, 35 F.Supp.3d 310, 324-25 (E.D.N.Y. 2014) (same).  Thus, contrary to Plaintiff's contention, Plaintiff's allegations that Cook and other Buffalo police officers engaged in shooting dogs in the course of narcotics raids based on defective or non-defective no-knock warrants without alleging all such shootings were unreasonable because the dogs involved did not attack the officers or otherwise pose a threat warranting defensive lethal force by the officers, do not plausibly allege constitutional violations, cognizable under *Carroll*, of which policymakers of the City of Buffalo like Derenda must have been aware yet failed to prevent or had adopted or knowingly condoned.[7]  In order to sustain the Complaint as to whether all alleged killings of dogs in the course of drug raids, mistaken or not, were unreasonable and thus unconstitutional seizures, the court would be required to believe that in all of the

---

[7] Plaintiff's allegations that it is the "habit" of Buffalo police officers, *see* Complaint ¶ 53, including the Individual Defendants, to unnecessarily shoot dogs, implying non-purposeful conduct, actually negates that such shootings are motivated by the putative municipal policy, *see Boans*, 5 F.Supp.3d at 373. However, Plaintiff also alleges that such shootings were "part of the customary practices," Complaint ¶ 56, of the Defendant City and its Police Department.

instances, specifically the estimated 100 shootings allegedly by Defendant Cook, to which the Complaint refers, the dogs involved did not attack Cook or the officers involved in the executing the warrant or otherwise posed no threat because, for example, as in this case, the dog was alleged to have been sufficiently tethered and thus unable to become a threat to officers executing a search warrant.  *See Carroll,* 712 F.3d at 650 (plaintiff's dog "aggressively" approached defendant when defendant the dog shot at close range warranting defendant's use of lethal force); *Robinson v. Pezzat*, 818 F.3d 1, 13 (D.C. Cir. 2016) (police reports which "invariably" indicate dogs shot by police attacked the police provide no evidence that defendant municipality had "notice of a pattern of unconstitutional conduct adequate to prove deliberate indifference").  As such, Plaintiff's allegations do not remotely approach the degree of deliberate indifference to a pattern of known constitutional violations necessary to establish *Monell* liability based on an alleged failure to provide adequate training or supervision as Plaintiff alleges in Plaintiff's Second Claim.  *See Owens v. Haas*, 601 F.2d 1242, 1246, *cert. denied*, 444 U.S. 980 (1979).

In the absence of any reasonable specificity as to the identity of the source of newspaper reports to which Plaintiff alludes that police shootings of dogs during search warrant executions by Buffalo police were done as a matter of "policy," such assertions, even if they had been included or referenced in the Complaint, could not be illustrative of facts Plaintiff would be prepared to prove, *Bible*, 799 F.3d at 640 n. 17; *Hunter*, F.Supp.3d at 324-25, because of the doubtful availability of such unidentified source, and therefore cannot suffice to plausibly show that such a policy for *Monell* purposes exists.  The same is true with respect to Plaintiff's unsupported assertions that such

unjustified shootings were "widespread," Dkt. 21 at 13, an assertion which, significantly, is not alleged in the Complaint and as a contention by counsel cannot satisfy the plausibility standard to state a valid claim.  *See Charles v. Levitt*, 2016 WL 3982514, at **7-8 (S.D.N.Y. July 21, 2016) (considering counsel's opinion, including "counsel's baseless perception" set forth as an allegation in an amended complaint, to be "utterly irrelevant" such that the amended complaint did not state a claim), *appeal docketed*, Nos. 16-2889 and 16-2902 (2d Cir. Aug. 19, 2016).  Similarly, Plaintiff attempts to bolster Plaintiff's allegations that circumstantial evidence exists to show Defendant Derenda's knowledge of Plaintiff's asserted Fourth Amendment violations based on unwarranted shooting of dogs during search warrant executions by referring to police records, over a four-year period (2011-2014), of police conduct involving such shootings, Plaintiff's Exh. M, indicating police engaged in narcotics search warrant executions were required to shoot dogs at the premises, primarily pit bulls, which had attacked the officers.  *See* Plaintiff's Exh. M (*passim*).  However, these records are also not referenced in the Complaint and Plaintiff's characterization, Dkt. 21 at 14, that the records constitute results of "sham[ ]" investigations does not provide any indication pointing to the availability of evidence in the reported instances that Buffalo police had used unnecessary force and that City Defendants, particularly Commissioner Derenda, had knowledge of widespread Fourth Amendment violations involving shooting dogs during drug raids.  *See Robinson*, 818 F.3d at 13 (official reports showing police shot dogs after being attacked provide no evidence that defendant municipality had knowledge of pattern of unconstitutional conduct sufficient to prove deliberate indifference); s*ee also Charles*, 2016 WL 3982514, at **7-8 (counsel's opinion does not

17

provide basis to satisfy pleading of claim was plausible).  The court therefore finds that Plaintiff has failed to plausibly allege City Defendants had knowledge of widespread or repeated Fourth Amendment violations based on unnecessary shootings of dogs during narcotics search warrant executions.  Plaintiff's allegations that such reports are "always . . . erroneous and contrived," Complaint ¶ 57, without any allegation of facts to support such an otherwise grossly speculative assertion, also is insufficient to satisfy the plausibility pleading requirement as to City Defendants' knowledge of "widespread" constitutional violations based on unnecessary shooting of dogs during narcotics search warrant executions.

It is common knowledge that drug dealers use dogs with aggressive capacities, particularly pit bulls, to help them in defending against intruders, including police, who intend to seize their narcotics and drug sale proceeds.  *See* Jake Flanagin, THE TRAGEDY OF AMERICA'S DOG, Pacific Standard, Feb. 28, 2014, at 1, https://psmag.com/environment/tragedy-americas-dog-pit-bull ("The pit bull's trademark loyalty combined with its muscular physique . . . came to represent aggression . . . thus becoming the preferred guard dog for drug dealers and gangsters.").  Based on common sense and experience it is therefore implausible to believe that dogs kept by those engaged in narcotics trafficking and the subject of drug raids to which the Complaint refers, including the Thomas front apartment which was the apparent object of the search warrant,  never attack strangers or police or are always tethered in a dwelling or apartment when officers attempt to execute search warrants, particularly no-knock search warrants, such that police shooting of the dogs during drug raids would always be unreasonable as Plaintiff alleges with respect to City Defendants.  To the

contrary, pit bulls and other dog breeds kept by drug dealers as guard dogs are more likely to be left free within the target premises to attack strangers, including police executing search warrants, whether ultimately shown to be defective or not.  Indeed, as another writer stated, "[w]arring drug dealers also train the dogs to be killers and then use them as 'four legged guns.'"  *Pit Bulls In Drug Dealers' Fierce Canine Corps*, Strat Douthat, LOS ANGELES TIMES, Nov. 13, 1994, https://articles.latimes.com/print/1994-11-13/news/mn-62013.  Plaintiff's policy and usage allegations are therefore insufficient on their face because they are based on a single alleged incident involving the Individual Defendants and on the conduct, albeit allegedly repetitive, of one officer, Defendant Cook, to allege a pervasive course of unconstitutional police conduct in repetitive and unnecessary shootings of canines during drug raids of which a policymaker of the City of Buffalo, like Commissioner Derenda, must have been aware regarding the alleged unnecessary shooting of dogs including Plaintiff's.  *See DeCarlo*, 141 F.3d at 6, (conduct of single non-policy maker officer insufficient to establish Monell liability); *Mikulec*, 909 F.Supp.2d at 228 (mere allegation of an official policy or usage insufficient).  In the absence of a plausible allegation of unconstitutional conduct by the Buffalo police based the unnecessary shooting of dogs during drug raids, Plaintiff's claim that such unconstitutional conduct results from a municipal policy or usage also fails.  *See Segal*, 459 F.3d at 219 (stating, in affirming summary judgment in favor of defendants, "[b]ecause the district court properly found no underlying constitutional violations, its decision not to address the municipal defendants' liability under *Monell* was entirely correct"); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) (actionability of claim of a violation of a constitutional right "'must . . . be judged by

reference to the specific constitutional standard which governs that right.'") (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  Plaintiff does not, moreover, purport to allege that any other senior officials of the City, such as the Mayor or members of its Common Council, were responsible for the alleged policy or practice, nor does Plaintiff allege Defendant Cook is a policy-maker.

Circumstantial evidence of widespread and pervasive practices may support an inference of the existence of a municipal policy or usage causing or condoning unconstitutional conduct by police as Plaintiff states.  *See* Plaintiff's Response at 12 (citing *Santos v. New York City*, 847 F.Supp.2d 573, 576 (S.D.N.Y. 2012) (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993))).  However, nothing in the Complaint points to any circumstantial evidence of widespread unnecessary dog shootings by Buffalo police officers during drug raids in the City of Buffalo.  As discussed, Discussion, *supra*, at 14-15, any reliance on assertions of such widespread abuse which appeared in a free local newspaper is unavailing as it was not included in the Complaint.  Thus, in this case, whatever unpleaded circumstantial evidence there may be upon which Plaintiff relies to sustain the Complaint that supposedly attributes knowledge to Commissioner Derenda of the so-called widespread practice of police shooting non-threatening dogs in connection with narcotics raids as a basis for municipal liability under *Monell,* does not constitute knowledge by Derenda, as a municipal policy-maker, of "widespread" Fourth Amendment violations in the form of unreasonable shootings of dogs constituting unreasonable seizures which is the constitutional standard applicable to Plaintiff's § 1983 claims sufficient to plausibly allege *Monell* liability against City Defendants.  Rather, it more likely represents

knowledge of the more typical and reasonable actions of the police in defending themselves against threats and attacks by guard dogs, particularly pit bulls, commonly known to be kept by narcotics traffickers, *see* Discussion, *supra*, at 14-15, while carrying out their duties directed to the interdiction of narcotics trafficking within the City of Buffalo.  As such, Plaintiff's reliance on this theory of *Monell* liability is insufficient to sustain the Complaint's allegations of liability against the City Defendants.  By the same token Plaintiff's allegations of *Monell* liability based on City Defendants' failure to train police officers in order to avoid the unnecessary use of lethal force against dogs, Complaint ¶ 56, also fails because Plaintiff has not plausibly alleged a prerequisite underlying Fourth Amendment violation through the use of unnecessary force against animals in the course of executing no-knock search warrants based on a policy or usage created by City Defendants.  *See Segal*, 459 F.3d at 219 (underlying constitutional violations required for *Monell* liability); *Singer*, 63 F.3d at 116 (same).

Plaintiff's reliance (Plaintiff's Response at 12), on *Iacovangelo v. Correctional Medical Care, Inc.*, 624 Fed.Appx. 10 (2d Cir. 2015), to demonstrate the Complaint states a plausible claim of *Monell* liability is unavailing.  In *Iacovangelo*, the plaintiff's *Monell* claim was rejected for lack of pleading of evidence of the existence of any formal policy to provide "inadequate medically supervised withdrawal" from drug abuse, *Iacovangelo*, 624 Fed.Appx. at 14, and any widespread practice of any failure to provide such care of which supervisory personnel must have been aware, *id.*, or the deliberate indifference of supervisors to the failure to provide the necessary level of medically supervised withdrawal.  *Id.*  Plaintiff's *Monell* claims against City Defendants suffer from the same inadequacy.  *See* Discussion, *supra*, at 13-18.  The same may be said for

Plaintiff's reliance on *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) for the proposition that widespread and persistent practices can establish the requisite municipal customs and usage for purposes of *Monell*. In *Matusick*, the record showed that such practices, harassment of plaintiff based on an inter-racial romantic relationship, were "frequent and severe" and well-known to defendant's senior managers. In contrast, in the instant case, nothing in the Complaint indicates Commissioner Derenda or other city policy-makers were in fact aware that unjustified dog shootings by City police were widespread or that officers were acting in accordance with an officially established policy that the dogs be killed during drug raids regardless of whether they posed a threat to the police as the Complaint in this case alleges. There is similarly no allegation of any formal policy requiring the killing of pet dogs during the execution of search warrants, and nothing in the Complaint plausibly alleges either a widespread practice, known to and condoned by Commissioner Derenda, of shooting dogs regardless of whether the canines posed a threat to police officers engaged in executing drug related search warrants, or that Commissioner Derenda was deliberately indifferent to the widespread continuation of such unreasonable seizures of dogs kept within dwellings which were the target of narcotics trafficking search warrant even if not correctly described in the warrants such as allegedly occurred in this case. While the failure to train municipal employees may support, consistent with *Monell,* municipal liability as a form of official "deliberate indifference to constitutional rights," *Carter v. Incorporated Village of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) ("*Carter*"), as Plaintiff also contends, Plaintiff's Response at 12, contrary to Plaintiff's contention, *Carter* supports a finding that the Complaint fails to plausibly allege how the

absence of training demonstrates deliberate indifference by City Defendants to Plaintiff's Fourth Amendment rights based only on the shooting of Plaintiff's dog under circumstances that plausibly show it may have been unreasonable to do so. *See DeCarlo*, 141 F.3d at 61 (misconduct by single non-policymaker actor cannot satisfy requirements for *Monell* liability). In *Carter*, the court found the plaintiff failed to demonstrate the existence of deliberate indifference to a widespread and persistent practice of fostering the specifically alleged First Amendment retaliation and Due Process violation claims, or that a policymaker approved any such alleged constitutional violations. *Carter,* 759 F.3d at 164. Similarly, in *Jones v. Town of East Haven*, 691 F.3d 72, 82 (2d Cir. 2012), also relied on by Plaintiff, Plaintiff's Response at 12, the court found insufficient evidence of a municipal policy or usage where the evidence was limited to "instances of reprehensible and . . . illegal and unconstitutional conduct . . ." but were not "so widespread as to support an inference that it must have been known and tolerated by superiors." Therefore, while the holding in *Jones* is based on a post-verdict record not, as here, a Rule 12(c) motion on the pleadings, it provides no support for a conclusion that the Complaint plausibly states a *Monell* claim against City Defendants as Plaintiff maintains. Thus, the Complaint does not plausibly allege City Defendants created or maintained a custom or usage sufficient to sustain a Fourth Amendment claim based on the unnecessary and thus unreasonable shooting of dogs located in dwellings which are the subject of police drug raids against City Defendants nor that City Defendants were deliberately indifferent to the need for training police to avoid such unreasonable force against dogs. Accordingly, Defendants' Rule 12(c)

motion as to the City Defendants[8] under Plaintiff's First, Second, Third, and Seventh

Claims should be GRANTED.[9]

In Plaintiff's First and Seventh Claims, Plaintiff alleges both the City and the

Individual Defendants are liable under § 1983 for the improper execution and entry of

Plaintiff's apartment by the Individual Defendants.  However, nowhere in the body of

either of these claims does Plaintiff assert that such entry was the result of or motivated

by a municipal policy or usage required under *Monell* for municipal liability, *see Boans*,

5 F.3d at 373,  and thus both claims must be also dismissed as to the City Defendants.

Defendants' Rule 12(c) motion directed to Plaintiff's First and Seventh Claims as to City

Defendants based on the alleged illegal entry by Individual Defendants should therefore

be GRANTED.

     2.   <u>Staleness</u>.

Plaintiff also alleges the search warrant issued on May 8, 2013 when executed

by Individual Defendants on June 3, 2013 was in violation of N.Y.Crim.P. Law § 690-

30[1] ("§ 690.30[1]") which requires that a search warrant issued by a state court be

executed within 10 days of its issuance and as such the execution of the warrant was

illegal and provides an additional ground for relief under Plaintiff's First Claim.

However, Plaintiff's First Claim alleges Plaintiff's right to damages based on the

Fourth and Fourteenth Amendments and it is basic that § 1983 actions are limited to

---

[8]  Plaintiff concedes that Plaintiff's claims against Defendants City of Buffalo Police Department, the Buffalo Police Department Narcotics Division and Officer Brian Gummo, who is not named in the Complaint's caption but is named in the caption to Plaintiff's Eighth Claim, *see* Complaint at 23, and was not served, should be dismissed.  *See* Dkt. 21 at 16.
[9]  City Defendants' Rule 12(c) motion directed to Plaintiff's Eighth Claim alleging § 1985 claims should also be GRANTED as the requirements for a *Monell* claim based on § 1985 claim are the same as for a § 1983 claim.  *See Davis v. Town of Hempstead*, 2000 WL 268571, at *1 (2d Cir. Mar. 10, 2000) (citing *Owens v. Haas*, 601 F.2d 1241, 1247 (2d Cir.), *cert. denied*, 444 U.S. 980 (1979)).  Additionally, Plaintiff's Eighth Claim is barred by an intracorporate conspiracy doctrine and an insufficiently pleaded conspiracy based on discriminatory animus as § 1985 requires.  *See* Discussion, *infra*, at 27-28.

recourse for the violation of rights protected by the federal constitution and not for state law related claims.  *See Sykes v. Bank of America*, 723 F.3d 399, 405-06 (2d Cir. 2013) ("To state a claim under 42 U.S.C. § 1983, the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right.") (underlining added).

A similar (stale warrant) ground for § 1983 relief is pleaded in Plaintiff's Seventh Claim; however, in contrast to Plaintiff's staleness claim as pleaded in Plaintiff's First claim, Plaintiff's Seventh Claim is predicated solely on the Fourth Amendment and it is well-settled that "[s]tale warrants are void," *People v. Glen*, 282 N.E.2d 614, 619 (N.Y. 1972) (citing caselaw) (Breitel, J.) and, as such, may constitute a Fourth Amendment violation as an unreasonable search which can be remedied pursuant to § 1983.  Thus, to the extent Defendants Rule 12(c) motion was directed by Defendants to Plaintiff's Seventh Claim based on staleness under the Fourth Amendment as an unreasonable search, the motion should be DENIED.

Accordingly, Defendants' Rule 12(c) motion directed to Plaintiff's First Claim based on § 690.30[1] should be GRANTED; Defendants' Rule 12(c) motion directed to Plaintiff's Seventh Claim based on alleged staleness as a Fourth Amendment violation should be DENIED.

### 3.    Plaintiff's Sixth Claim (State Law Claim).

Defendants also move, Defendants' Memorandum, Dkt. 15-3 at 11, against Plaintiff's Sixth Cause of Action alleging City Defendants negligently hired Defendant Cook, and negligently failed to provide proper training and supervision of the Individual Defendants, particularly with respect to Defendant Cook ("negligently . . . hiring and

entrusting Detective Joseph Cook to carry out the sworn duties of a City of Buffalo

Police Officer"), as well as other police officers with respect to the use of unnecessary

force against animals encountered in private premises in the course of official duties.

*See* Complaint ¶ 77. Plaintiff has not responded to Defendants' contentions. Under

New York law, claims against the employer of police accused of negligent or

intentionally tortious misconduct must show that such misconduct occurred "outside the

scope of employment when committing the tort." *Cerbelli v. City of New York*, 2008 WL

4449634, at *4 (Sept. 30, 2008 E.D.N.Y.), *Report and Recommendation adopted*, 2008

WL 4449644 (Oct. 1, 2008 E.D.N.Y.) (citing caselaw); *see also Steele*, 2016 WL

1274710, at *3 (citing cases); *Eckardt v. City of White Plains*, 930 N.Y.S.2d 22, 25 (2d

Dep't. 2011) (no cause claim for negligent hiring, retention, supervision or training

against city employer where police officers alleged excessive force in arresting plaintiff

occurred in the scope of their employment) (citing cases). Here, as Defendants point

out, Defendants' Memorandum at 11, the Complaint (Complaint ¶¶ 22-23) alleges

Defendant Derenda and the Individual Defendants "were discharging their duties in the

scope of their employment by the City of Buffalo Police Department . . .." Therefore,

under applicable New York law, Plaintiff has failed to plausibly allege negligence against

City Defendants based on a negligent hiring, including entrustment, of Defendant Cook

and negligence in the training and supervision of the Individual Defendants.

Accordingly, Defendants' Rule 12(c) motion directed to Plaintiff's Sixth Claim should be

GRANTED.[10]

---

[10]  Although Defendants assert Defendants' Rule 12(c) motion is directed to all of Plaintiff's claims, *see* Dkt. 15-3 at 4, Defendants do not provide any arguments in support of this assertion particularly directed to Plaintiff's Fourth Claim. *See* Complaint at 18-19. Accordingly, while Plaintiff's Fourth Claim alleging intentional infliction of mental distress based on Defendant Cook's shooting of Plaintiff's dog appears not

4.    Plaintiff's Eighth Claim (§ 1985).

Plaintiff's Eighth Claim alleges a § 1985 claim against City Defendants and Police Officer Brian J. Gummo, based on the alleged wrongful disposal of the remains of Plaintiff's dog pursuant to a conspiracy to deprive Plaintiff of his rights to equal protection and due process for the purpose of impeding Plaintiff's ability to pursue Plaintiff's Fourth Amendment claims.  Complaint ¶¶ 81-82.  A § 1985 claim requires a plaintiff allege a conspiracy for the purpose of depriving a person or class of persons equal protection of the law and an act in furtherance of such conspiracy which causes injury to plaintiff or a deprivation of any right or privilege of a citizen.  *See Robinson v. Allstate Ins. Co.*, 508 Fed.Appx 7 at **2 (2d Cir. Jan. 22, 2013) (quoting *United States Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983)).  In addition, to serve as a predicate for a § 1985 claim, the alleged conspiracy must be motivated by "'some racial or . . . class-based, invidious discriminatory animus.'"  *Id.* (quoting *Britt v. Garcia*, 457 F.3d 264, 270 n. 4 (2d Cir. 2006)).  Here, Plaintiff's conspiracy allegations in support of Plaintiff's Eighth (§ 1985) claim fail as such claim against City Defendants is barred under the "intracorporate conspiracy doctrine," *Murphy v. City of Stamford*, 634 Fed.Appx. 804, 805 (2d Cir. 2015), under which "'officers, agents, and employees of a single corporate entity [including a municipality] are legally incapable of conspiring together,'" *id.* (quoting *Hartline v. Gallo*, 546 F.3d 95, 99 n. 2 (2d Cir. 2008)).  In this case, Plaintiff's Eighth Claim specifically alleges that following the shooting of Plaintiff's dog, City Defendants conspired to interfere with Plaintiff's equal protection right to

---

to be cognizable under New York law, *see Steele*, 2016 WL 1274710 at *3 (citing New York caselaw holding that as dogs are personal property New York law does not recognize an action for intentional or negligent destruction), the court declines to address the issue in the absence of a motion by Defendants' briefing specifically directed to Plaintiff's Fourth Claim.

"pursue[ ] a lawsuit" with respect to such shooting by unlawfully disposing of dogs remains and "falsifying [official] reports" regarding the shooting.  Complaint ¶ 82.  Thus, Plaintiff alleges City Defendants as employees or agents of the City engaged in such "conspiratorial activities [which] pertained to and were motivated by the [City Defendants'] respective public duties."  *Murphy*, 634 Fed.Appx. at 805.[11]  As such, Plaintiff's § 1985 claim is not cognizable under § 1985.  Plaintiff's Eighth Claim also fails to allege that City Defendants' actions with regard to the shooting and disposal of Plaintiff's dog were motivated by any form of discriminatory animus as § 1985 requires and thus cannot plausibly state a claim under § 1985.  *See* Complaint ¶ 23 ("at all relevant times, Defendat[ ] Derenda [was] discharging [his] duties in the scope of [his] employment by the City of Buffalo").  *Robinson*, 508 Fed.Appx. at **2.  Accordingly, Defendants' Rule 12(c) motion directed to Plaintiff's Eighth Claim should be GRANTED.

      B.   <u>Individual Defendants</u>.

      Defendants also contend Plaintiff's § 1983 claims (Plaintiff's First, Second, Third, and Seventh Claims) against the Individual Defendants based on Fourth Amendment violations should be dismissed.  *See* Defendants' Reply, Dkt. 22 at 6.  Insofar as these claims are based on the Individual Defendants' alleged illegal entry into Plaintiff's apartment based on a defective warrant, the Individual Defendants are incorrect.  Fairly read, Plaintiff's allegations include that the Individual Defendants failed to sufficiently investigate and determine that the target of the search warrant occupied the upper front apartment at 304 Breckenridge, Complaint ¶¶ 29-31, 46-48, 80, not the upper rear apartment where Plaintiff resided and at which Individual Defendants executed the

---

[11]  As noted, Plaintiff agrees Plaintiff's claim against Officer Gummo should be DISMISSED.  *See* Discussion, *supra*, at 23 n. 8.

search warrant, that before executing the warrant the Individual Defendants were informed of this fact, Complaint ¶¶ 30, 80, and that Individual Defendants therefore knew or reasonably should have known that the warrant failed to correctly describe the place to be searched, Complaint ¶ 80, thus rendering execution of the warrant in Plaintiff's apartment in violation of the Fourth Amendment's requirement that the premises to be rendered be reasonably described in the warrant. *See* U.S. Const. Art. IV (warrants required to "particularly describe[ ] the place to be searched"). *See Groh v. Ramirez*, 540 U.S. 551, 557-58 (2011) (facially invalid search warrant that failed to sufficiently describe persons or things to be seized was basis of § 1983 action). Based on Plaintiff's factual allegations Plaintiff's Fourth Amendment claims based on the Individual Defendants' entry into Plaintiff's apartment are not speculative. *See Twombly,* 550 U.S. at 570 (factual allegations must go beyond the "speculative level"). The same analysis applies to Plaintiff's Fifth Claim based on state tort law against Defendant Cook for wrongfully shooting Plaintiff's dog, Complaint ¶ 74. Therefore, the Complaint plausibly alleges a Fourth Amendment violation on this ground and, as such, Defendants' Rule 12(c) motion as to the Individual Defendants as to Plaintiff's First, Fifth, and Seventh Claim based on the Individual Defendants' execution of the defective warrant should be DENIED.

Similarly, Defendants' contention that Plaintiff's First, Second, and Third Claims against the Individual Defendants based on destruction of Plaintiff's dog and loss of other property should be dismissed is correct, in part. As to the shooting of Plaintiff's dog, Plaintiff unambiguously alleges only that Defendant Cook shot the dog, not Defendants Garcia or Callahan. Complaint ¶¶ 47, 58, 74. Accordingly, Plaintiff's claims

based on Cook's action in shooting Plaintiff's dog must be dismissed as to Defendants Garcia and Callahan based on a lack of personal involvement in the shooting plausibly alleged by Plaintiff on the part of Garcia or Callahan.  *See Spavone*, 719 F.3d at 135 (personal involvement required for § 1983 claims).  Nor does Plaintiff attempt to assign liability for personal involvement against Garcia or Callahan based on an alleged failure to intervene to prevent Cook from shooting Cindy unnecessarily.  *See Rogoz v. City of Hartford*, 796 F.3d 236, 251 (2d Cir. 2015) ("In order for a law enforcement officer to be held liable [under § 1983] for another officer's use of excessive force, 'there must have been a realistic opportunity [for former officer] to intervene to prevent the harm from occurring.'" (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994))).  Further, in Plaintiff's Third and Fifth Claims, Plaintiff alleges a loss of other personal property. Complaint ¶¶ 61, 75.  As the Individual Defendants are alleged to be the only officers involved in the search, it is plausible and not speculative that Plaintiff's other property items were seized by each of the Individual Defendants as Plaintiff alleges.  *See* Complaint ¶¶ 61, 75.  Accordingly, Defendants' Rule 12(c) motion directed to Plaintiff's First, Third, and Seventh Claims should be GRANTED in part and DENIED in part.

2.    Summary Judgment/Plaintiff's Motion To Amend Scheduling Order.

In support of Defendants' alternative request for summary judgment, Defendants contend Plaintiff has produced no evidence demonstrating the existence of a material issue of fact in regard to Plaintiff's First, Second, and Third Claims against City Defendants based on the alleged existence of a municipal policy or usage requiring or condoning the illegal entry, seizure, and destruction of Plaintiff's property including Plaintiff's dog.  Defendants' Memorandum at 9-10.  Plaintiff opposed Defendants'

motion for summary judgment contending Plaintiff has not received satisfactory or complete responses to Plaintiff's Interrogatories served January 2, 2016 (Dkt. 21-11). Defendants' answers (Dkt. 21-12) were served September 2, 2016.  Of Plaintiff's 38 Interrogatories, Defendants failed, possibly because of the limitation on interrogatories set forth in Fed.R.Civ.P. 33(a)(1) (absent court order or stipulation interrogatories limited to 25), to respond to the last 13 Interrogatories, three of which address Plaintiff's municipal liability claim with respect to the unnecessary destruction of animals, *see* Dkt. 21-23 ¶¶ 30-32, and the balance addressing prior claims against Individual Defendants, such possible Defendants' mental health issues, and the specifics of Defendants' affirmative defenses.  *See* Plaintiff's Response at 7.  Instead of moving to compel Defendants' responsive discovery or proceeding pursuant to Fed.R.Civ.P. 30(a) (requests for oral depositions of a party), Plaintiff served, pursuant to Fed.R.Civ.P. 45, subpoenas on City Defendant Derenda and the Individual Defendants for their depositions on October 14, 2016.  *See* Plaintiff's Response at 7 referencing Dkt. 21-9 ("Plaintiff's Subpoenas").  However, despite Defendants' representation indicating Individual Defendants, but not Defendant Derenda, would appear, Dkt. 15-11 at 1, the subpoenaed Defendants failed to appear for their depositions on October 14, 2016, Dkt. 23 at 2,and subsequently filed, on October 31, 2016, Defendants' Rule 12(c) and Rule 56 motions.  As noted, however, Plaintiff has not moved to compel Defendants' further answers to Plaintiff's Interrogatories, nor has Plaintiff moved to compel Defendants' compliance with Plaintiff's Subpoenas.

Under the Scheduling Order for this case filed January 21, 2016 (Dkt. 13), all discovery was to be completed by October 31, 2016; motions to compel discovery were

to be filed October 3, 2016.  Nevertheless, Plaintiff contends summary judgment should

be denied because discovery is not complete.  Plaintiff's Response at 9.  As noted,

Background, *supra*, at 2, on January 12, 2017, Plaintiff moved to amend the Scheduling

Order to extend discovery arguing that Defendants' failure to respond to Plaintiff's

Interrogatories and failure to appear for depositions prevented Plaintiff from timely

completing discovery and that an attorney for Defendants failed earlier to request an

amended Scheduling Order as had been agreed to extend the period for discovery.

Plaintiff's Motion to Amend the Scheduling Order at 1-2.  Accordingly, Plaintiff requests

the court enter an Amended Scheduling Order extending the period for discovery in this

case.  Plaintiff also states Plaintiff's counsel suffered from an unspecifed "neurological"

health issue in the fall of 2016 and unduly relied on Defendants' counsel's

representation that Defendants would request such relief, which was not done, and

which contributed to Plaintiff's failure to timely move to compel or to amend the

Scheduling Order.  *Id.* at 5-6.  In response to Plaintiff's motion, by e-mail dated January

17, 2017 (Dkt. 29), Defendants advised the court Defendants took no position with

respect to Plaintiff's motion including Plaintiff's representations with regard to

Defendants' failure to seek such relief.  Based on the circumstances presented, the

court finds Plaintiff's failure to timely seek an amendment to the Scheduling Order prior

to the October 31, 2016 discovery completion date represents excusable neglect,

pursuant to Fed.R.Civ.P. 6(b)(1)(B), and that good cause for the same reasons also

supports Plaintiff's motion.  Accordingly, Plaintiff's motion, Dkt. 23, is, without

opposition, GRANTED.  An Amended Scheduling Order will be filed with this Decision

and Order / Report and Recommendation.  As Plaintiff's Motion to Amend the

Scheduling Order extending the time for discovery has been granted, discovery must be deemed incomplete therefore requiring the court dismiss Defendants' alternative request for summary judgment.  *See* Fed.R.Civ.P. 56(d) (summary judgment to be deferred pending further discovery);  *Wood v. United States*, 175 Fed.Appx. 419, 420 (2d Cir. Apr. 4, 2006) (citing *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) ("Where, as here, a party moves for summary judgment on the ground that the nonmoving party bears the burden of proof and will be unable to prove an essential element of this case, Rule 56 allows summary judgment only 'after adequate time for discovery.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)))).  As such Defendants' alternative motion seeking summary judgment for City Defendants is DISMISSED without prejudice.

3.    <u>Disqualification</u>.

As noted, Defendants request Plaintiff's counsel, Matthew A. Albert ("Albert") be disqualified under N.Y. Rules of Professional Conduct 1.11(a)(2) ("Rule 1.11(a)(2)") and 3.7(a).  Defendants' Memorandum at 14-18.  In support of Defendants' request, Defendants contend that while employed as an assistant district attorney, Albert obtained from Defendant Garcia information concerning Defendants' involvement in the events leading to the instant litigation.  In particular, Defendants assert that shortly after Defendants' execution of a City Court search warrant at Plaintiff's apartment and the shooting of Plaintiff's dog, a pit bull terrier, by Defendant Cook within the apartment, Albert telephoned Garcia and asked Garcia about the circumstances of the entry and shooting which Garcia provided, Garcia Affidavit I (Dkt. 15-7) ¶ 8, and requested Garcia meet with Albert to discuss the warrant execution in further detail and bring the official

Police Department file ("the file") for Albert's review. *Id.* According to Garcia, Albert

informed him that the District Attorney had requested Albert to "look into the matter."

Garcia Affidavit II (Dkt. 28-1) ¶ 11. Garcia further avers that he met with Albert, as

Albert had requested, the next day at the Erie County District Attorney's office and

discussed with Albert the warrant execution at Plaintiff's apartment "in further detail."[12]

Garcia Affidavit I ¶ 9. Garcia also states that Albert reviewed the file which contained

"the warrant, the warrant application information and 'ops plan'" and "other internal

Police Department documents concerning" the execution of the warrant. *Id.* ¶ 7. An

"ops plan" refers to a written plan for execution of a warrant defining the "manner" for

execution of a search warrant, "the location to be searched, the route to the search

location, and describes the role of each team member involved during and after the

[warrant] execution." Garcia Affidavit II ¶ 4. Garcia also states that prior to the June 3,

2013 warrant execution, Albert accompanied Defendants Cook, Callahan and Garcia on

at least one other search warrant execution on December 15, 2012 at 321 Mystic Street

in Buffalo, Dkt. 28-2 ¶ 8, Dkt. 28-3 ¶ 7 ("the December 2012 search warrant"), during

which Albert participated in the staging of the warrant execution and search of the

premises where dogs were present but none were shot by the police. Garcia Affidavit II

¶ 10. Garcia also avers that at Albert's urging he joined a group called the Buffalo

Animal Rescue Coalition ("BARC"), members of which include law enforcement

personnel, prosecutors, and representatives of the local SPCA dealing with animal

cruelty cases. Defendants Cook and Callahan also describe their prior contact with

---

[12] No further description of such details was provided by Garcia in support of Defendants' motion to disqualify despite the court's request to do so and Defendants made no request to provide such details under seal. *See* Garcia Affidavit II, Dkt. 28-1 (*passim*).

Albert in connection with the December 2012 search warrant and BARC.  Cook Affidavit II ¶ 8; Callahan Affidavit II ¶¶ 6, 7.

In his responding declaration filed January 31, 2017 (Dkt. 27-1) ("Albert Declaration"), Albert acknowledges his prior contacts with Defendants Cook, Callahan, and Garcia during his tenure as an Assistant Erie County District Attorney, Albert Declaration ¶¶ 3-4, and that after reading a local newspaper account about the incident, "[a]s an animal lover and decent human being" he called Garcia following the June 3, 2013 incident "more as a friend" to learn "what had happened."  *Id.* ¶ 12.  According to Albert, in the brief "five minute," Garcia Affidavit ¶ 8, telephone conversation, Garcia stated that Garcia, Cook, and Callahan had "hit the correct house as listed on the search warrant, and that the [Plaintiff's] dog had acted aggressively."  Albert Declaration ¶ 13.  Albert does not deny that, as Garcia averred, he told Garcia that the District Attorney had asked him to look into the matter, *see* Albert Declaration (*passim*), but Albert does deny engaging in any subsequent conference with Garcia regarding the warrant execution and shooting of Plaintiff's dog.  *See* Albert Declaration ¶ 7 ("in the case at bar . . . I did not conference with any officers"); *see also* Dkt. 21 at 21 ("such conference never happened").  Albert further explains that as to the execution of the December 2012 search warrant, Albert remained in a car, and entered the premises only after all the suspects were handcuffed.  *Id.* ¶ 8.  Albert further states that until he read Garcia's explanation, Garcia Affidavit II ¶ 4, he was unaware of the meaning of the term "ops plan."  Albert Declaration ¶ 8.  In sum, Albert claims his knowledge of execution of search warrants involving narcotics by Buffalo Police is equivalent to that portrayed in connection with a television program called "COPS."  *Id.* ¶ 10.  Albert

further states that after his telephone conversation with Garcia, he had no further

contact with the subject matter of the instant case until he was contacted by Plaintiff

approximately two years later.  *Id.* ¶ 14.  According to Plaintiff, before retaining Albert in

this case, Albert informed Plaintiff of Albert's prior communications with Defendants

Callahan, Cook, and Garcia, but Albert's representation of Plaintiff's interest has been

vigorous, Affidavit of Adam Arroyo, Dkt. 21-20 ¶ 8, and disqualification of Albert would

greatly disadvantage Plaintiff.  *Id.* ¶ 11.

Courts have inherent power to disqualify attorneys in order to "'preserve the

integrity of the adversary process.'"  *Goodwine v. City of New York*, 2016 WL 379761, at

*1 (Jan. 29, 2016) (quoting *Hempstead Video, Inc. v. Incorporated Village of Valley

Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted)) which is

"'a matter committed to the sound discretion of the district court.'"  *Id.* (quoting *Purgess

v. Sharrock,* 33 F.3d 134, 144 (2d Cir. 1994)).  *See also Murray v. Metropolitan Life Ins.

Co.,* 583 F.3d 173, 178 (2d Cir. 2009) ("ultimate reason for disqualification: harm to the

integrity of the judicial system").  The party seeking disqualification bears the burden of

establishing disqualification is necessary and to avoid using such requests for tactical

reasons the court reviews the merits with "fairly strict scrutiny."  *Goodwine*, 2016 WL

379761, at *2 (quoting *Decker v. Nagel Rice, LLC*, 716 F.Supp.2d 228, 231-32

(S.D.N.Y. 2010)); *see also Green v. City of New York*, 2011 WL 2419864, at *2

(S.D.N.Y. June 27, 2011) ("high standard of proof imposed on party seeking

disqualification" avoids undue interference with "a client's right to choose counsel" and

use of "disqualification motion as a tactical device").  Further, while courts may, in

resolving disqualification motions, "consult" disciplinary rules of New York State such

rules are "not binding authority."  *Id.* at \*2 (citing *Hempstead Video*, 409 F.3d at 132),

and as "'not every violation of a disciplinary rule will necessarily lead to disqualification,'"

*id.* (quoting *Hempstead Video*, 409 F.3d at 132), "'disqualification is only warranted in

the rare circumstance where an attorney's conduct poses a significant risk of trial taint."

*Id.* (internal quotation marks omitted) (quoting *Decker*, 716 F.Supp.2d 228 at 231

(quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1978))).

As noted, Defendants contend Albert's prior relationship with Defendants

Callahan, Cook, and Garcia as it relates to Plaintiff's claims violated Rule 1.11(a)(2)

prohibiting representation by a lawyer "in connection with a matter in which the lawyer

participated personally and substantially as a public officer or employee, unless the

appropriate government agency gives its informed consent, confirmed in writing, to the

representation."  N.Y. Rules of Prof. Conduct Rule 1.11, N.Y. Judiciary Law Appendix

(Mckinney 2016).  Thus, for disqualification to be warranted under Rule 1.11(a)(2), the

Rule requires that "the lawyer must have participated 'personally and substantially' . . .

and the 'matter' must have been the same matter."  *Green*, 2011 WL 2419864, at \*2.

Here, the parties do not dispute that Albert's representation of Plaintiff in the instant

action is essentially the same matter, *i.e.*, the actionability of Defendants Callahan,

Cook, and Garcia's entry into Plaintiff's apartment and the alleged unnecessary

shooting by Cook of Plaintiff's dog which Plaintiff contends posed no risk to Defendants

in connection with their execution of the warrant.  Nor do the parties contest Albert's

personal involvement with Garcia in obtaining information about the incident and

Albert's personal representation of Plaintiff in this subsequent action for damages

against Defendants based on the Fourth Amendment and state law, and that the Erie

County District Attorney has not consented to Albert's representation of Plaintiff. Therefore, the question of Albert's possible disqualification under Rule 1.11(a)(2) turns on whether his prior involvement, as an assistant district attorney, with the Defendant police officers, particularly Garcia, constitutes a substantial participation in the matter shortly after the occurrence of the incident in June 2013.

For purposes of Rule 1.11(a)(2), substantial participation is "substantive in nature" and "directly affect[s] the merits of [the prior case]." *In re Coleman*, 895 N.Y.S.2d 122, 125 (2d Dept. 2010) (former chief surrogate's court attorney not disqualified under Rule 1.11(a)(2) where review of petitioner's case during attorneys prior service with court was primarily administrative – review for assignment to a staff attorney – and record indicates no substantive legal involvement by such former chief attorney affecting merits of petitioner's proceeding).  Under DR 9-101(b), the predecessor to Rule 1.11(a)(2), the phrase "substantial responsibility" meant disqualification of a former government attorney was contemplated where the attorney was "'personally involved to an important, material degree, in the investiga[tion] or deliberative processes regarding the transactions or facts in question  . . ..'" *In re Coleman*, 895 N.Y.S.2d at 124 (quoting N.Y.S. Bar Assoc. Comm. on Prof. Ethics Op. #748 Nov. 5, 2001).  Thus, factors relevant to this question include whether Albert "merely gathered and produced documents, responded to pleadings . . . or, rather, served as a counselor and advisor on the broad subject at hand." *Green*, 2011 WL 2419864, at *2 (disqualification of two former assistant corporation counsel required based on attorneys' substantial participation in underlying subject matter where attorneys obtained confidential information on conduct of strip-searches by City

Corrections Department including review of relevant training material, policy statements, information acquired from Corrections Department head and City's risk managers, and preparation of fact witnesses relative to impending litigation regarding such searches), and whether Albert participated to a material degree in the investigation of the search or any subsequent deliberative process such as whether to initiate a prosecution of Defendants.  Similarly, in *Heyliger v. Collins,* 2014 WL 910324, at *2 (N.D.N.Y. Mar. 10, 2014), the court disqualified a former county prosecutor from representing a newspaper against defamation claims that plaintiff was a gang member, brought by a plaintiff who had been previously prosecuted by the attorney in connection with plaintiff's criminal charges which were dismissed and upon which plaintiff's defamation claims were based as such prosecutorial conduct constituted substantial involvement under Rule 1.11(a)(2) in the same matter.  In this case, although Garcia avers that Albert misrepresented his solicitation of information from Garcia regarding the entry and shooting of Plaintiff's dog was at the direction of the then District Attorney, which direction could indicate that Albert was substantially engaged in an investigation of the incident, Defendants, who have the burden, proffer no affidavit from the former District Attorney, or other official, confirming such fact.  Thus, the record is barren of anything to support that Albert substantially participated in the incident or its aftermath by any substantive involvement such as an official investigation, deliberations regarding whether criminal charges should be filed, or prosecution.  *See Green*, 2011 WL 2419864, at *2; *Coleman*, 895 N.Y.S.2d at 124.

Moreover, while obtaining confidential information could be considered a form of substantial participation in a prior matter handled by a government lawyer and thus a

ground for potential disqualification in this case, *see McBean v. City of New York*, 2003 WL 21277115, at *4 (S.D.N.Y. June 3, 2013) (citing cases), the record fails to establish Albert in fact obtained such information, contrary to Defendants' assertion. Nor do Defendants characterize the information Garcia imparted as confidential. *See* Defendants' Reply Memorandum at 8 ("Albert had intimate knowledge of the subject incident"). Neither of Garcia's Affidavits indicate precisely what information Garcia provided to Albert. *See* Dkt. 28-1 ¶ 12 (Garcia "discussed details regarding the search warrant, information used to obtain the warrant, the execution of the warrant, and the circumstances by which the dog was shot"), and ¶ 13 (Garcia provided "further details" at the follow-up meeting with Albert). *See also* Defendants' Reply at 8 ("Garcia . . . shared information with . . . Albert"). However, such generalized statements leave one to speculate as to whether any of the "details" mentioned by Garcia involved confidential information regarding the search and shooting not then otherwise publicly available or which may be acquired by Plaintiff through normal pretrial discovery and, as such, the statements are simply too vague and unspecific to satisfy Defendants' burden. *See Goodwine,* 2016 WL 379761, at *2 (party seeking disqualification has burden) (citing caselaw). Indeed, the court's request that Defendants provide "greater detail on the substance of their prior discussion with Mr. Albert," Dkt. 26 at 3, was intended to elicit an indication that the information was in fact confidential in nature, but despite the court's request to do so Defendants failed to provide an indication that whatever Garcia imparted to Albert was confidential thereby establishing Albert's substantial involvement in the matter. However, as noted, Discussion, *supra*, at 33, n. 12, Garcia provided no further particulars regarding his subsequent discussion with Albert. Further, Albert's

prior experience with the officers in executing "similar" search warrants such as the December 2012 search warrant is too attenuated from the instant matter and cannot constitute the same subject matter for purposes of Rule 1.11(a)(2) particularly as Defendants do not argue these search warrant executions involved shooting animals by police. Additionally, Defendants fail to suggest what probative evidence relevant to Plaintiff's claim Albert may have gleaned from his participation in the December 2012 search. The court recognizes that to Defendants, Albert's problematic contact while as Assistant District Attorney with Garcia about the matter immediately following the incident, supposedly motivated by his being an animal lover and "decent" good person, creates at least an aura of impropriety and objectively could reasonably be viewed as professionally unwise; however, as discussed, under the applicable standard the record is insufficient to warrant outright disqualification.

Finally, Defendants' substantial, 14-month, delay in seeking Albert's disqualification also weighs against disqualification. *See Murray*, 583 F.3d at 180 ("lengthy and unexcused delay in bringing motion to disqualify weighs against disqualification); *see also Goodwine*, 2016 WL 379761, at *4 (prompt objection to substitution of disqualified counsel under Rule 1.11(a)(2) negates inference that disqualification sought to obtain tactical advantage). Here, the grounds for Albert's disqualification should have been apparent to Defendants immediately upon Albert's appearance in this case, after filing the Complaint on August 21, 2015, suggesting that Defendants' delay in seeking Albert's disqualification was to gain an improper advantage. Thus, considering all relevant factors the court is constrained to conclude that Defendants have failed to meet Defendants' burden to establish Albert, while as an

assistant district attorney, substantially participated in the prior incident at Plaintiff's apartment giving rise to the instant action and that Albert's representation violates Rule 1.11(a)(2); accordingly Defendants' motion is DENIED as to this ground.

Turning to Defendants' alternative ground for Albert's disqualification under N.Y. Rules of Prof. Conduct 3.7(a) ("Rule 3.7(a)"), the so-called "witness-advocate rule," *Goodwine*, 2016 WL 379761, at *4, based on his status as a potential witness in this case ("Rule 3.7(a)"), the court also finds, on this record, such contention to be unsupported.  As relevant, Rule 3.7(a) prohibits a lawyer from serving as litigation counsel "in a matter in which the lawyer is likely to be a witness on a significant issue of fact," subject to several exceptions including, *inter alia*, that disqualification will result in a "substantial hardship" to the client.  Rule 3.7(a)(3).  According to Defendants, disqualification of Albert under Rule 3.7(a) is required because Albert's prior contacts with Defendants imbues Albert with personal knowledge of the case which "renders him a witness," Defendants' Memorandum at 17, because should Garcia's testimony be at odds with Garcia's prior statements to Albert concerning the circumstances of the search of Plaintiff's apartment and the shooting by Cook of Plaintiff's dog, Albert would need to testify in rebuttal in order to impeach Garcia.  *Id.*  Where disqualification is sought based on the witness advocate rule, which requests are disfavored, *Goodwine*, 2016 WL 379761, at *2 (citing caselaw), courts consider whether the putative testimony is a "necessary" determination based on 'factors such as the significance of the matters, weight of the testimony, and availability of other evidence.'"  *Id.* (quoting *Murray*, 583 F.3d at 178).  Here, the record is, at present, insufficient to determine whether any of these criteria are met.  Specifically, in the absence of Garcia's or Albert's depositions, it

is not possible to find that Garcia's testimony on the relevant factual issues, such as
Defendants' possible errors in failing to properly identify the correct location of the
apartment of the suspected narcotics trafficker in Defendants' application for the search
warrant and what degree of threat Plaintiff's dog actually presented upon Defendants'
apparently mistaken entry, would be inconsistent with any prior statements made by
Garcia to Albert during the course of their five-minute post-incident telephone
conversation, or in-person conference, even assuming it occurred.  To be sure, any
such prior inconsistent statements by Garcia to Albert with regard to these questions
would be fair game for impeachment, *see* Fed.R.Evid. 613(b), by contradictory
testimony, as Defendants posit, if believed by the trier of fact, but on the record such
potential inconsistency remains speculative as does Albert's potential need to testify in
an attempt to impeach Garcia at trial.  Specifically, when Garcia, an experienced
narcotics detective, was contacted by Albert and responded to Albert's inquiry regarding
the search, Garcia was well-aware that despite their prior cordial professional
relationship, Garcia was speaking to an assistant district attorney with potential
prosecutorial authority over the subject matter of the search and shooting of Plaintiff's
dog.  Any notion that Garcia, an experienced investigator, may have shared
incriminatory information regarding Defendants' conduct relative to the search and
shooting of Plaintiff's dog, or admissions useful in a later civil action such as the instant
case, and thus potentially created the possibility of placing a prior consistent statement
or admission in Albert's hands for future use against Garcia, Callahan or Cook, is highly
unlikely.  Significantly, Defendants do not assert Albert at any time attempted to elicit
such potentially damaging information.  Thus, Defendants have not met Defendants'

43

"'heavy burden of demonstrating that disqualification is necessary.'"  *Goodwine*, 2016 WL 379761, at *2 (quoting *Decker*, 716 F.Supp.2d at 231-32).  Nor have Defendants shown that the court would be misled or that Defendants will suffer significant prejudice sufficient to warrant Albert's disqualification under Rule 3.7(a) if Albert remains as Plaintiff's attorney.  *See* N.Y. Rules of Prof. Conduct comment 4; *see also Murray*, 583 F.3d at 178 (citing cases).  Further, as with Defendants' contentions pursuant to Rule 1.11(a)(2), *see* Discussion, *supra*, at 30-34, Defendants' unexplained delay in seeking Albert's disqualification also weighs against Defendants' request.  *See Murray* 583 F.3d at 180.  Accordingly, Defendants' motion on this ground is also DENIED.

Finally, the court notes Defendants alternatively requested an evidentiary hearing on the question of Albert's disqualification.  *See* Defendants' Memorandum at 18; Defendant's Reply at 9.  However, as such requests are left to the discretion of the court, *see Perlstein v. Perlstein*, 429 N.Y.S.2d 896, 902 (1st Dept. 1980) (trial court's acceptance of attorney's statement that there was no disclosure of privileged information supported trial court's decision not to conduct hearing on issue), and given the lack of factual support for Defendants' motion, the court finds that such a hearing would result in a fishing expedition for Defendants with no substantial likelihood that anything persuasive on the merits of Defendants' motion would result.  Even if the hearing established that Albert contacted Garcia at the District Attorney's behest and met with Garcia the next day, as Garcia maintains, there is no indication that any further discussions between Albert and the District Attorney regarding the matter occurred based on such meeting, that any actions of an official nature transpired, or that any of the information provided by Garcia at the disputed conference was somehow of a

confidential nature.  *See* Discussion, *supra*, at 25.  Defendants had nearly 14 months to conduct discovery, including a deposition of Albert and the former District Attorney, or to at least make an effort to obtain an affidavit from the District Attorney or other official with knowledge, to establish Albert had, contrary to his averment, any official role in the matter, on the need for Albert's disqualification prior to filing Defendants' motion.  Based on the record, little, if any, such discovery was sought.  Accordingly, Defendants' request for an evidentiary hearing, despite the fact that Garcia and Albert dispute any face-to-face meeting regarding the matter occurred, is also DENIED.

4.   Defendants' Request For A Protective Order.

Finally, Defendants request a protective order barring the video-taping of the Individual Defendants' depositions pursuant to Fed.R.Civ.P. 26(c) ("Rule 26(c)"), contending the Individual Defendants require this additional level of anonymity based on their continuing service as police narcotics investigators which as to Defendant Callahan includes undercover investigations.  Defendants' Memorandum at 20. Defendants, accordingly, argue that video-taping the Individual Defendants' depositions will increase the risk of unnecessary exposure of the Individual Defendants to public opinion because of the publicity surrounding Plaintiff's claim and also increase the likelihood that their identities will become more widely known to the local criminal element creating additional and unnecessary threats to their safety.  Plaintiff opposes Defendants' request contending Defendant's safety considerations were too vague and speculative to warrant relief.  Plaintiff's Response at 24-25.  The court disagrees.  The recent public record is unfortunately replete with instances of wanton, often fatal, attacks on law enforcement officers.  There is no need to add to such palpable concerns

for the safety of the Individual Defendants in this case. *See Milner v. City of New York*, 2012 WL 3138110, at 14 (S.D.N.Y. Aug. 2, 2012) (recognizing need to pixelate police officers' images during deposition based on "security concerns."), *report and recommendation adopted* 2012 WL 6097111 (S.D.N.Y. Dec. 10, 2012)). Significantly, Plaintiff offers no reason to indicate that the Individual Defendants' depositions require video-taping to be effective or, if necessary, useful for trial. Nor does Plaintiff suggest the Individual Defendants would not be available for trial should the matter require trial. Moreover, Defendant Cook averred that Plaintiff's counsel has posted on the Internet, specifically Facebook, Detective Cook's home address, Dkt. 15-8 ¶ 6, which Plaintiff does not dispute or explain, an action at odds with any apparent legitimate litigation need. *See Paisley Park Enterprises, Inc. v. Uptown Productions*, 54 F.Supp2d 347, 349 (S.D.N.Y. 1999) ("courts must be vigilant to ensure their processes are not used improperly for purposes unrelated to their role"). Defendants' Rule 26(c) motion is therefore GRANTED.

## CONCLUSION

Based on the foregoing, City Defendants' Rule 12(c) motion (Dkt. 15) directed to Plaintiff's First, Second, Third, Sixth, Seventh, and Eighth Claims against City Defendants should be GRANTED, in part and DENIED, in part; Defendants' Rule 12(c) motion as to Plaintiff's First, Third, and Seventh Claims against Individual Defendants should be GRANTED, in part and DENIED, in part; Defendants' alternative motion for summary judgment is DISMISSED without prejudice; Defendants' motion to disqualify is DENIED; Defendants' Rule 26(c) motion is GRANTED; Plaintiff's motion to amend the Scheduling Order (Dkt. 23) is GRANTED.

Respectfully submitted as to
Defendants' Rule 12(c) motion,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

SO ORDERED as to
Defendants' Alternative Motion
for Summary Judgment,
Defendants' Motion to Disqualify
Plaintiff's Counsel and Defendants',
Plaintiff's Motion to Amend
the Scheduling Order,
Motion for Protective Order.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  July 20, 2017
        Buffalo, New York

47

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    July 20, 2017
          Buffalo, New York