UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ADAM ARROYO,

                                    Plaintiff,

        v.

THE CITY OF BUFFALO,
CITY OF BUFFALO POLICE DEPARTMENT,
DANIEL DERENDA, Commissioner of the
City of Buffalo Police Department,
DET. JOHN GARCIA, Buffalo Police Narcotics
Officer,
DET. SGT. BRENDA CALLAHAN, Narcotics Officer,
CITY OF BUFFALO POLICE DEPARTMENT
  NARCOTICS DIVISION,
DET. JOSEPH COOK,
MICHAEL DeGEORGE, City of Buffalo Spokesperson,

                                    Defendants.
_____

**DECISION**
**and**
**ORDER**

**15-CV-753A(F)**

APPEARANCES:         MATTHEW A. ALBERT, ESQ.
                     Attorney for Plaintiff
                     254 Richmond Avenue
                     Buffalo, New York  14222

                     TIMOTHY A. BALL
                     CORPORATION COUNSEL, CITY OF BUFFALO
                     Attorney for Defendants
                     MAEVE E. HUGGINS,
                     Assistant Corporation Counsel, of Counsel
                     1112 City Hall
                     65 Niagara Square
                     Buffalo, New York    14202


        In this § 1983 civil rights action, Plaintiffs alleged Defendants Garcia ("Garcia"),

Callahan ("Callahan") and Cook ("Cook"), City of Buffalo Police narcotics detectives,

violated Plaintiff's Fourth Amendment rights by improperly executing a Buffalo City

Court search warrant ("search warrant" or "warrant") at Plaintiff's premises, in the

course of which Defendant Cook shot and killed Plaintiff's pet dog. Plaintiff also alleged intentional infliction of mental distress, negligent destruction of Plaintiff's personal property and defamation as pendent state law claims. Plaintiff's Fourth Amendment claims against Defendant City of Buffalo and its then police commissioner, Daniel Derenda, were previously dismissed. *See Arroyo v. City of Buffalo*, 2017 WL 3085835 at * 7 (W.D.N.Y. Jul. 20, 2017), *Report and Recommendation* ("the R&R"), *adopted by* 2018 WL 488943 (W.D.N.Y. Jan. 20, 2018). Specifically, Plaintiff alleges that the warrant, issued May 30, 2013, was directed to "304 Breckenridge Street, Upper, Buffalo, New York" without specifying which of the two upper units which then existed at that address, the front unit occupied by a known narcotics trafficker, one Tori Rockmore ("Rockmore"), or the rear, Plaintiff's apartment, was the correct target premises to be searched for evidence of narcotics, specifically cocaine trafficking. According to Plaintiff, Defendants, as part of Defendants' application, presented to the issuing Buffalo City Court judge, Hon. Craig Hannah ("Judge Hannah" or "the issuing judge"), a confidential informant who had recently engaged in a controlled buy, under the direction of Defendants Callahan and Garcia, from Rockmore who was describe in the warrant as a "Black/male appox. 5'10", 190 lbs, 26-30 yoa and the occupant of 304 Breckenridge Street-upper." Dkt. 25-11 at 1. No reference to a front or rear upper dwelling unit at the address was made in either Defendant Garcia's application to Judge Hannah or on the face of the warrant. *See* Dkt. 33-11 at 1-3; 4-5. According to the application for the search warrant, the informant appeared before Judge Hannah, *in camera*, and testified to the facts of the controlled purchase, and the informant's testimony was recorded and "preserved." Dkt. 33-11 at 1. At Defendant Garcia's deposition, conducted August 29,

2017, Defendant Garcia testified that although the warrant did not particularize which unit was to be searched, or otherwise indicate the existence of two separate units in the upper floor at 304 Breckenridge, that because the informant informed Garcia and testified before Judge Hannah that the controlled buy with the referenced black male took place in the rear, Plaintiff's, apartment, Dkt. 33-12 at 3-4; 6, the June 3, 2013 execution of the warrant by Defendants, including Detective Cook, was correctly directed to Plaintiffs' rear apartment where Defendant Cook encountered and shot Plaintiff's dog, a pit bull.  Defendants' subsequent search of Plaintiff's apartment, which also damaged several items of Plaintiff's personal property, failed to yield any evidence of the suspected narcotics.  Plaintiff also asserts that one of Defendants' prior attorneys, Assistant Corporation Counsel David M. Lee, represented in open court that Defendants had "hit" the "wrong unit" at 304 Breckenridge Street.  Dkt. 33 at 7; Dkt. 33-12 at 6.

Before the court is Plaintiff's motion to compel answers to Plaintiff's Interrogatories 8-12, 14, and 30 ("Plaintiff's interrogatories" or "the interrogatories"), served January 5, 2016, and for sanctions, filed December 13, 2017 (Dkt. 33).  As relevant, Plaintiffs' Interrogatory No. 8 seeks the identity of all persons involved in the investigation leading to obtaining the search warrant, including identification of the confidential informant and production of the informant's *in camera* testimony before Judge Hannah.[1]  Interrogatory No. 9 requests similar information regarding execution of the warrant.  Interrogatory No. 10 seeks information concerning the informant's reliability, such as prior assistance to police, whether the assistance was substantiated, and whether the informant's testimony for the warrant indicated the presence of

---

[1]  The court considers Plaintiff's requested production of the recording and/or transcript of such testimony as made pursuant to Fed.R.Civ.P. 34(a)(1)(A) ("Rule 34(a)(1)(A)").

"animals at [Plaintiff's] residence," *i.e.*, the rear apartment. Interrogatory No. 11

requests information regarding any search warrants directed to 304 Breckenridge

Street, without limitation as to a particular period of time, including the identity of all

persons involved in obtaining and executing such warrants. Interrogatory No. 12 seeks

similar information for search warrants obtained for the address prior to May 2013.

Plaintiff's Interrogatory No. 14 requests identification of all City of Buffalo Police

Department policies and guidance to police officers concerning the proper procedures

for obtaining and executing search warrants including any guidelines with respect to

avoiding unnecessary injury to animals at a target residence.[2] Interrogatory No. 30

requests detailed information with regard to any Police Department policies and

procedures as to police officers' "treatment of animals encountered in the line of duty"

including the use of force against such animals.

In Defendants' answers to Plaintiff's interrogatories served September 2, 2016,

Dkt. 32-9, Defendants objected to Interrogatory No. 8 as overly burdensome, overbroad,

lacking in relevance, and asserted the informant's privilege. Defendants' answer to

Interrogatory No. 9 referred Plaintiff to Defendants' required initial disclosures pursuant

to Fed.R.Civ.P. 26(a)(1) ("Rule 26(a)(1)"). Defendants' objection to Interrogatory No. 10

asserted the same grounds Defendants raised against Interrogatory No. 8. Defendants

objected to Interrogatory No. 11 on overbreadth, burdensomeness, and relevancy

grounds and again asserted the informant's privilege. Defendants also objected to

Interrogatory No. 12 arguing it was overly broad, burdensome and lacking in relevancy.

Defendants' objection to Plaintiff's Interrogatory No. 14 also asserted overbreadth,

---

[2]   Although not specifically requested, the parties' contention with respect to this interrogatory implies
Plaintiff also seeks production of the relevant documents pursuant to Rule 34(a)(1).

burdensomeness, lack of relevancy, and interposed the law enforcement privilege. Defendants failed to answer any of Plaintiff's interrogatories beyond Interrogatory No. 25, specifically, as relevant, Interrogatory No. 30, presumably because such interrogatories exceeded 25, the limit established by Fed.R.Civ.P. 33(a)(1), an issue unaddressed by the parties as a bar to Plaintiff's request.

1.  Defendants' Objections Based on Burdensomeness, Overbreadth and Relevancy.

As a result of Judge Arcara's adoption of the R&R, Plaintiff's remaining claims include Plaintiff's § 1983 claims against Defendants Garcia, Callahan and Cook ("the Individual Defendants") based on a violation of Plaintiff's Fourth Amendment rights against an unreasonable search and seizure, however, as to the loss of Plaintiff's dog, the alleged liability is sought against Defendant Cook only (Plaintiff's First Claim); Plaintiff's § 1983 claim against Individual Defendants alleging excessive force during execution of the warrant in violation of Plaintiff's Fourth Amendment rights (Plaintiff's Third Claim); Plaintiff's mental distress claim based on state law against Defendants City of Buffalo, Buffalo Police Department, Buffalo Police Narcotics Division, Derenda, and Michael DeGeorge ("the City Defendants"), and the Individual Defendants (Plaintiff's Fourth Claim);[3] Plaintiff's intentional and negligent damage to property claim based on state law against the Individual Defendants (Plaintiff's Fifth Claim); Plaintiff's claim of wrongful execution of the search warrant against the Individual Defendants

---

[3]  Defendants have not moved against Plaintiff's Fourth Claim, see *Arroyo*, 2017 WL 3085835, at * 8, n. 10, nor did Defendants move against Plaintiff's other state law claims when filing Defendants' motion pursuant to Fed.R.Civ.P. 12(c) and 56.  Although in Defendants' recent summary judgment motion, filed June 29, 2018 (Dkt. 45-1), Defendants state Plaintiff has "agreed to withdraw" Plaintiff's mental distress and defamation claims, Dkt. 45-1 at 3, n. 1, no stipulation of discontinuance to this effect appears on the record to date.

based on a violation of the Fourth Amendment (Plaintiff's Seventh Claim); and Plaintiff's state law defamation claim against Defendants Buffalo Police Department Narcotics Division, Derenda and DeGeorge and the Individual Defendants (Plaintiff's Ninth Claim).

In this case, Defendants' objection to Plaintiff's interrogatories based on the interrogatories as overly broad, burdensomeness and lacking in relevancy should be overruled. To be sustained, an objection based on overbreadth requires a showing that the interrogatory "extends to information not relevant to the claims or defenses in the matter." Baicker-McKee, Janssen, Corr, FEDERAL CIVIL RULES HANDBOOK (2018 Thompson Reuters) at 861 (citing *Jewish Hosp. Ass'n of Louisville, Ky. v. Struck Const. Co, Inc.*, 77 F.R.D. 59, 60 (W.D.Ky. 1978)). *See Spin Master Ltd. v. Bureau Veritas Consumer Products Service, Inc.*, 2016 WL 690819, at *4 (W.D.N.Y. Feb. 22, 2016) (denying motion to compel discovery of general ledgers which were not relevant to claims asserted against requested party such that discovery request was overbroad). In federal civil actions discovery may seek information relevant to a claim or defense if the request is proportional to the needs of the case considering such factors, relevant to this case, the importance of the requested discovery in a determination of the merits. *See* Fed.R.Civ.P. 26(b)(1); *see also Woodward v. Afify*, 2017 WL 279555, at * 1-2 (W.D.N.Y. Jan. 23, 2017) (quoting Fed.R.Civ.P. 26(b)(1) and citing cases). Such requested information need not be in itself admissible in evidence, *id.*, and includes information that may be useful for purposes of impeachment of opposition testimony. *Gross v. Lunduski*, 304 F.R.D. 136, 147, 161 (W.D.N.Y. 2014) (ordering disclosure of requested information that may be relevant to impeaching witness). A valid burdensomeness objection requires a showing under oath by a person with knowledge

of a responding party's records that obtaining the responsive information would require an undue effort or expense such as where an interrogatory "seeks a high level of detail." Baicker-McKee, Janssen, Corr, FEDERAL CIVIL RULES HANDBOOK at 862 (citing caselaw). *See also Brown v. McKinley Mall, LLC*, 2017 WL 2332330, at *3 (W.D.N.Y. May 30, 2017) ("Absent an affidavit from a person with personal knowledge of the factual nature of an alleged undue burden arising from a discovery request pursuant to the Federal Rules of Civil Procedure, such generalized assertions that a discovery request is unduly burdensome will be overruled." (citing *Strom v. Nat'l Enterprise Systems, Inc.*, 2010 WL 1533383, at *4 (W.D.N.Y. Apr. 15, 2010))). Here, Plaintiff's claims revolve around Plaintiff's allegation that the Individual Defendants were negligent in investigating the alleged narcotics trafficking at the 304 Breckenridge Street address upon which the search warrant was based such that in applying for the search warrant these Defendants failed to particularize for the issuing judge the existence of two separate living quarters in the upper floor of the house and that, as a result, the Individual Defendants wrongfully executed the warrant at Plaintiff's apartment resulting in damage to Plaintiff's property, particularly the loss of Plaintiff's pet dog. Plaintiff's other state law-based claims for mental distress and defamation (assuming they remain in the case) also arise from the Individual Defendants' execution of the warrant at what Plaintiff alleges was the rear apartment, not the front apartment, at 304 Breckenridge Street where, according to Plaintiff, the cocaine purchase by the informant, as represented to Judge Hannah, actually occurred, and Plaintiff's reaction to Defendants DeGeorge and Derenda's public statements in defending the police investigation at issue suggesting, according to Plaintiff, Plaintiff was engaged in narcotics trafficking.

Further, Defendant Garcia testified at his deposition, conducted August 29, 2017, that when testifying before Judge Hannah, the confidential informant who engaged in the controlled purchase stated that it occurred in the rear, *i.e.*, Plaintiff's, apartment. *See* Dkt. 33-12 at 3-4 (Garcia Deposition at p. 13, Lines 3-7); Dkt. 33-12 at 3-4, 6. Fairly construed, Plaintiff's interrogatories at issue on Plaintiff's motion seek details regarding the obtaining and execution of the search warrant at Plaintiff's premises, particularly whether the informant in fact advised Garcia and testified to Judge Hannah, as Garcia represented in his recent deposition, that the controlled cocaine sale took place in Plaintiff's upper rear unit, and not the upper front unit where Rockmore, a suspected narcotics trafficker, according to Plaintiff, resided; whether Individual Defendants had any prior connection to the residences at 304 Breckenridge Street such that they may have had reason to have known prior to obtaining the warrant that there were two separate upper floor dwelling units yet failed to particularize such fact in Garcia's application to Judge Hannah, or on the face of the warrant, before it was issued indicating a violation of the Fourth Amendment's particularity requirement, *see Groh v. Ramirez*, 540 U.S. 551, 557-58 (2011) (facially invalid warrant that failed to sufficiently describe persons or things to be seized was basis for § 1983 action), as well as official police procedure relating to obtaining and executing warrants. Such facts together with Plaintiff's allegation that Defendants DeGeorge and Derenda should have, or were aware, of these circumstances also may support that these Defendants' public statements, as alleged by Plaintiff, that Plaintiff's denials of drug trafficking at his apartment were false thereby constituted defamation causing Plaintiff's alleged mental distress damages.

It is well-settled that in cases raising claims under the Fourth Amendment of unauthorized execution of a search warrant "'[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to disclose, to the issuing Magistrate.'" *Velardi v. Walsh*, 40 F.3d 569, 575 n. 2 (2d Cir. 1994) (quoting *Maryland v. Garrison,* 480 U.S. 79, 85 (1987) (where defendant officers had made reasonable efforts to ascertain whether third floor of target residence building contained one or two units, unauthorized entry into plaintiff's unit not an unreasonable search)). With regard to the Fourth Amendment's requirement that a warrant "particularly describ[e] the place to be searched," U.S. Const. art. IV, "'[i]t is enough if the description is such that the officer[s] armed with a search warrant can with reasonable effort ascertain and identify the place intended [to be searched].'" *Velardi*, 50 F.3d at 576 (quoting *National City Trading Corp. v. United States*, 635 F.2d 1020, 1024 (2d Cir. 1980) (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925))). Nor is the warrant invalid for § 1983 purposes "if it is based on seemingly reliable information which is later found to be erroneous." *Lewis v. City of Mt. Vernon, N.Y.*, 984 F.Supp. 748, 756 (S.D.N.Y. 1997) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 184 (1990)). Officers may avoid § 1983 liability in the course of executing a search warrant at an incorrect location if the officer acted "'under the mistaken but reasonable belief that they were in fact executing the warrant at the correct residence . . .. Conversely, any search or seizure that took place after the officers knew or reasonably should have known that they were in the wrong residence . . . [is not immune from liability]." *Closure v. Onondaga County*, 2007 WL 446595, at *5 (N.D.N.Y. Feb. 7, 2007) (finding defendants who entered plaintiff's home to execute warrant, not the residence where warrant was

intended to be executed, entitled to qualified immunity, and quoting *Pray v. City of Sandusky, Ohio*, 49 F.3d 1154, 1159 (6th Cir. 1995)). Further, where in the course of such a mistaken entry officers are "put on notice of risk that they might be in a unit erroneously included within the terms of the warrant" they are required to terminate the search. *Green v. City of Mt. Vernon (N.Y.)*, 96 F.Supp.3d 263, 290 (quoting *Garrison*, 480 U.S. at 87). In other words, the Fourth Amendment is violated where officers in the course of executing a warrant enter the wrong residence unless the officers "had an objectively reasonable belief that they were acting in a manner that did not violate the rights of the occupants of the residence which was mistakenly entered." *Closure*, 2007 WL 446595, at *7. Nevertheless, failure by executing officers to take reasonable steps, such as inspection of premises, checking utility records and debriefing informant, to ascertain the presence of more than one living unit located at the target premises prior to obtaining a warrant may create grounds for finding an illegal search. *See Garrison*, 480 U.S. at 89 n. 13 (search of "entire floor under those circumstances" containing more than one dwelling may establish a Fourth Amendment violation). *See also United States v. Voustianiouk*, 685 F.3d 206, 211 (2d Cir. 2012) (purpose of Fourth Amendment that premises to be searched be sufficiently described is to assure that place actually searched is the location intended to be searched by issuing judge and not one mistakenly searched by executing officers) (citing caselaw and 2 Wayne R. LaFave, SEARCH AND SEIZURE : A TREATISE ON THE FOURTH AMENDMENT § 4.5 (4th ed.. 2004)).

Here, a fair reading of Plaintiff's Interrogatories Nos. 8-12 and 14 show they are directed to whether, in making application for the search warrant, Garcia knew or should have reasonably been aware based on prior contact with the 304 Breckenridge Street

address that the upper floor of 304 Breckenridge Street was comprised of two units, the front then being occupied by a known narcotics trafficker (where the confidential informant most likely engaged in the controlled buy), and the rear occupied by Plaintiff with no criminal record, yet failed to present such information to Judge Hannah when applying for the search warrant on May 30, 2013, such that Individual Defendants' later entry into Plaintiff's rear apartment to execute the warrant on June 3, 2013 was the result of the warrant which lacked the required degree of particularity as to the target premises. In Interrogatory No. 8, Plaintiff specifically requests production of the record of the *in camera* proceeding before Judge Hannah, Dkt. 33-8 at 7, which may indicate whether the existence of the two upper units at the premises, as Plaintiff alleges, was addressed with Judge Hannah by Garcia and whether, as Garcia testified at his deposition, the confidential informant identified to Judge Hannah Plaintiff's rear unit as the place where the controlled cocaine purchase occurred. Interrogatory No. 14 requests information with regard to official policies and procedures for obtaining search warrants, and the execution of warrants when officers confront animals on the premises, including the "process of verification of the premises to be searched." Although City Defendants are no longer parties to Plaintiff's Fourth Amendment claims, if Individual Defendants during the course of conducting the investigation leading to the search at issue failed to comply with such official guidance by, for example, failing to check utility records at 304 Breckenridge Street, conducting proper surveillance of the premises while the controlled purchase transpired, or sufficiently debrief the informant as to exactly where in the upper floor of the residence the transaction occurred, *see Garrison*, 480 U.S. at 81 (describing reasonable efforts by investigating officers including checking

utility records to confirm only one apartment existed on third floor area as the target of the warrant), such deviation may be evidence the Defendants lacked a reasonably objective, albeit mistaken, belief that Plaintiff's rear apartment was the proper target of the search sufficient to defeat a defense of qualified immunity. *See Dodd v. City of Norwich (Conn.)*, 827 F.2d 1, 4 (2d Cir. 1987) (compliance with police department's policy and training regarding holstering of defendant's weapon while engaged in handcuffing resident relevant to defendant's immunity defense). *See also Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018) ("'[T]he qualified immunity defense . . . protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful.'" (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010))). For example, if the informant informed Garcia, as Garcia testified, and testified to Judge Hannah as Garcia averred, that the transaction took place in the rear apartment, it is remarkable that such an important particular, one required by the Fourth Amendment, would not have been conveyed to Judge Hannah or escaped his attention had it been proffered to him during the *in camera* proceeding such that the warrant made no mention of the existence of the rear (or front) apartment as the target residence as, according to Garcia, the informant had in fact testified. Accordingly, the court finds Plaintiff's Interrogatories Nos. 8-12 and 14 seek relevant information, are not overly broad or burdensome, and Defendants' objection on such grounds is therefore overruled. However, in its discretion, the court limits the scope of Interrogatories Nos. 11 and 12 to the period of three years prior to and following May 2013. Plaintiff's motion with respect to these interrogatories, as modified, should be GRANTED; Plaintiff's

motion with regard to Interrogatory No. 30 is DENIED as exceeding, without prior court permission, the limit established by Rule 33(a)(1).

2.     <u>Defendants' Objections Based on the Informant's Privilege</u>.

As noted, Defendants also object to Plaintiff's Interrogatories Nos. 8-12 insofar as these interrogatories request the identity of the confidential informant who assisted the Individual Defendants in conducting the investigation and carried out the controlled buy at 304 Breckenridge Street asserting the informant's privilege.  This privilege promotes the flow of information helpful to law enforcement, *Ayala v. City of New York*, 2004 WL 2914085, at *1 (S.D.N.Y. Dec. 16, 2004), however, the privilege must yield where disclosure is "'essential to a fair determination of the issues in the case.'"  *Id.* (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)).  The burden is on the party seeking the identity of the informant.  *Id.* (citing *In re United States*, 565 F.2d 19, 23 (2d Cir. 1977)).  Disclosure is "most appropriate when the informant is 'a key witness or . . . is integral in the case."  *Id.* (quoting *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988)).  The availability of other means of discovery, such as through depositions, weighs against disclosure.  *Id.* (citing caselaw).  Further, the privilege applies only to the informer's identity, not to his or her statements, *id.* (citing caselaw), and requires the court to balance the public's interest in protecting the flow of law enforcement information against the public's interest in a fair determination of the merits of the case.  *Id.* at *1 (citing *Roviaro*, 353 U.S. at 64).  Here, the record indicates that the informant's testimony regarding the specifics of the drug buy at 304 Breckenridge Street and the location within the house where it allegedly occurred was provided in testimony to Judge Hannah *in camera,* recorded and preserved.  *See* Dkt. 33-11 at 1.

As such, it potentially constitutes another source by which Plaintiff's need for the

pertinent information may be obtained without the necessity of a disclosure of the

informant's identity which would enable Plaintiff to obtain the informant's testimony in

this action by a non-party deposition pursuant to Fed.R.Civ.P. 45(a). *See Ayala*, 2004

WL 2914085, at *1. Notably, Defendants do not contend Defendants are unable to

produce a copy of this record for lack of possession, custody or control, either actual or

practical. [4] *See Gross*, 304 F.R.D. at 142 (lacking physical possession or custody of

requested documents does not excuse production where requested "party is legally

entitled to the documents or had the practical ability to acquire the documents from a

third-party" (citation and italics omitted)). The primary need of Plaintiff on this issue is

Plaintiff's desire to establish Garcia was neglectful in failing to determine the presence

of two living units on the upper floor of 304 Breckenridge Street and that contrary to

Garcia's deposition testimony, the informant did not inform Garcia or Judge Hannah that

the narcotics buy took place in the upper floor rear apartment occupied by Plaintiff.

Presumably, a review of such testimony, in the transcript or a recording thereof, by

Plaintiff will provide the necessary information with which Plaintiff can establish

Individual Defendants, particularly Garcia, did not enter Plaintiff's apartment with an

objectively reasonable belief that they were in the correct location based on the

informant's information about the location of the buy given to Garcia and Judge Hannah

prior to the search, and that, based on Plaintiff's asserted contradiction of Garcia's

deposition testimony on this key issue by the informant's putative testimony, Garcia's

---

[4] Defendants state only that "upon information and belief, Defendants do not possession [*sic*] such testimony." Dkt. 43 at 8. Defendants do not claim that Defendants, through counsel, are unable to obtain possession or control of a copy of the transcript.

credibility as a witness is subject to dispute. *See United States v. Benedetto*, 571 F.2d 1246, 1250 (2d Cir. 1978) (evidence on issue central to merits contradictory to defendant's specific testimony, even if arguably collateral, admissible for impeachment purposes in discretion of trial court); *Rosario v. Ercole*, 582 F.Supp.2d 541, 597 (S.D.N.Y. 2008) (adopting report and recommendation on habeas petition challenging, *inter alia*, trial court's admitting evidence impeaching alibi testimony because even where issue is collateral, "'a defendant should not be allowed to profit by a gratuitously offered misstatement.'" (quoting *United States v. Beno*, 324 F.2d 582, 588 (2d Cir. 1963)). The court therefore finds that Defendants must, with redaction of the informant's identity, provide a copy of the informant's *in camera* testimony before Judge Hannah.[5] In the event such record is, for some unexpected reason, no longer available to be produced, Plaintiff may renew Plaintiff's request for the identity of the informant to enable Plaintiff to attempt to locate and depose the informant on this issue pursuant to Rule 45(a). Defendants' objection based on the informant's privilege should therefore be sustained in part and overruled in part, and Plaintiff's motion pertaining to this request should be DENIED in part and GRANTED in part.

3. <u>Defendants' Objections Based on the Law Enforcement Privilege</u>.

As noted, Defendants also object, asserting the law enforcement privilege, to Plaintiff's Interrogatory No. 14 which, *inter alia*, seeks Buffalo Police Department policies and procedures for its police officers regarding proper procedures for obtaining and executing search warrants, including the avoidance of unnecessary harm to

---

[5] Should Individual Defendants demonstrate Defendants are in fact unable to do so, Plaintiff may request such document from Judge Hannah or other custodian by a non-party subpoena issued by Plaintiff pursuant to Fed.R.Civ.P. 45(a)(3) ("Rule 45(a)") (court admitted attorney to issue and sign Rule 45(a) subpoena).

animals present at subject premises. Defendants also contend that given that, based on the District Judge's adoption of the R&R, the City Defendants are no longer defendants under Plaintiff's § 1983 claim, the request is irrelevant. However, as discussed, *supra*, at 12 (citing *Dodd*, 827 F.2d at 4) because Individual Defendants' failure to comport with such policies and procedures in obtaining and executing the warrant at issue may indicate Individual Defendants, in conducting the investigation that resulted in the issuance of a warrant that failed to comply with the Fourth Amendment's particularity requirement also lacked any objectively reasonable ground to believe it was proper to obtain and execute the warrant lacking in the required degree of particularity in failing to specify Plaintiff's apartment as the premises to be searched. As such, the requested information is relevant to Plaintiff's Fourth Amendment claims against the Individual Defendants.[6]

The law enforcement privilege protects the law enforcement investigative techniques, confidential witnesses and law enforcement personnel, in order to prevent interference with investigations. *MacNamara v. City of New York*, 249 F.R.D. 70, 78 (S.D.N.Y. 2008), *vacated on other grds*, *In re The City of New York*, 607 F.3d 923 (2d Cir. 2010). The privilege covers law enforcement techniques and protocols where disclosure may harm current or future law enforcement efforts. *MacNamara*, 249 F.R.D. at 79. The party asserting the privilege is required to make "'a substantial threshold

---

[6]  Such evidence may not be relevant to Plaintiff's state law negligence claims. *See Pink v. Rome Youth Hockey Ass'n, Inc.*, 63 N.E.3d 1148, 1151 (N.Y. 2010) (failure to enforce compliance with defendant's internal rules or policies regarding misbehavior by spectators not evidence of negligence; "where an internal policy exceeds 'the standard of ordinary care,' it 'cannot serve as a basis for imposing liability.'") (citing *Sherman v. Robinson*, 606 N.E.2d 1365, 1369 n. 3 (N.Y. 1992) and quoting *Gilson v. Metropolitan Opera*, 841 N.E.2d 747, 749 (N.Y. 2005); *see also Asantewaa v. City of New York*, 935 N.Y.S.2d 18, 19 (1st Dep't. 2011) (violation of defendant's fire department seat belt requirements in transporting passenger in defendant's emergency vehicle no basis for negligence (citing New York caselaw)).

showing[ ] that there are specific harms likely to accrue from disclosure of the specific materials.'" *Id.* at 85 (quoting *Fountain v. City of New York*, 2004 WL 941242, at *3 (S.D.N.Y. May 3, 2004)). More specifically, the party asserting the privilege must show "the documents in question contain (1) information pertaining to 'law enforcement techniques and procedures," *In re The City of New York*, 607 F.3d at 948 (quoting *In re Dep't. of Investigation of the City of New York*, 856 F.2d 481, 484 (2d Cir. 1988), (2) information that would undermine 'the confidentiality of sources,' *id.*, (3) information that would endanger 'witness and law enforcement personnel,' *id.*, (4) information that would undermine 'the privacy of individuals involved in an investigation,' *id.*, or (5) information that would seriously impair 'the ability of a law enforcement agency to conduct future investigations,'" *Morrissey v. City of N.Y.*, 171 F.R.D. 85, 90 (S.D.N.Y. 1997). There is "'a strong presumption against lifting the privilege,'" *In re The City of New York,* 607 F.3d at 948 (quoting *Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997)). To rebut the presumption, the party seeking disclosure must show its suit is not frivolous and is brought in good faith, the information is not available from other sources, and the party has a compelling need for the privileged information. *Id.* (citing caselaw) (internal quotation marks omitted). If the court finds the presumption against disclosure has been rebutted, the court is required to "weigh the public interest in nondisclosure against the need of the litigant for access to the privileged information." *Id.* "To assess both the applicability of the privilege and the need for disclosure the court must ordinarily review the documents in question . . . and may require the party in possession to submit the documents for *in camera* review without a filing under seal." *Id.* Following such review and a determination of the request, the court will return the

documents to the custodian to assure their continued confidentiality.  *Id.* at 948-49.  If

disclosure is warranted, the court should fashion, pursuant to Fed.R.Civ.P. 26(c)(1)(G),

a protective order to "minimize the effects of disclosure" such as an "attorneys' eyes

only" review.  *Id.* at 949.

Here, Defendants interpose the privilege in Defendants' objection to Interrogatory

No. 14 which requests Defendants identify City of Buffalo Police Department "policies

and procedures" and related information regarding the requirement of "what constitutes

probable cause" and the proper execution of a search warrant including entry

techniques such as the use of force, particularly where an animal is found to be on the

target premises, and any procedures to minimize destruction of property during a

search, including such animals, particularly if the animal is "restrained" on the premises

in question.  In response, Defendants do not deny the existence of responsive

documents; rather, as discussed, *supra*, at 4, Defendants contend the request is overly

broad, burdensome and seeks irrelevant information, objections which the court has

rejected, *supra*, at 5-10, Defendants also assert the law enforcement privilege.  Dkt. 43

at 4 ("Interrogatory No. 4 is ambiguous and confusing . . . burden[some] . . . and may

implicate the law enforcement privilege").  Although Defendants do not specify the

prerequisites for application of the privilege, it is apparent to the court that Interrogatory

No. 14 is directed to law enforcement techniques and procedures, *i.e.*, obtaining and

execution of search warrants in narcotics investigations.  *In re The City of New York*,

607 F.3d at 948.  Defendants also assert, without specification, that providing the

requested information would seriously impair future investigations.  Dkt. 43 at 7-8

(quoting *In re The City of New York*, 607 F.3d at 944).  Revealing how an officer should

respond to an animal such as a pit bull, a breed sometimes associated with narcotics traffickers, *see Arroyo v. City of Buffalo,* 2017 WL 3085835, at * 6-7, *report and recommendation adopted*, 2018 WL 488943 (W.D.N.Y. Jan. 20, 2018) (citing narcotics traffickers use of pit bull dogs to guard against intruders including police executing warrants) on a target premises during execution of a narcotics search warrant could conceivably result in compromising future executions of such warrants increasing the danger to police officers involved in such executions. Thus, although Defendants' papers on this issue are certainly 'thin,' nevertheless, the court finds Plaintiff's Interrogatory No. 14's requests information within the scope of the privilege. Accordingly, the court considers whether Plaintiff has rebutted the privilege.

Here, Plaintiff's claim that Defendants improperly executed the warrant at his apartment in violation of the Fourth Amendment is based on asserted facts indicating the search warrant was facially defective for lack of a sufficient description of the target premises and that the Individual Defendants had no reasonable basis to search Plaintiff's apartment, and thus is non-frivolous. More specifically, if, contrary to Garcia's deposition testimony, the informant did not indicate the controlled cocaine buy occurred in Plaintiff's rear apartment, a substantial question of Individual Defendants' § 1983 liability and a lack of qualified immunity, based on Individual Defendants failure to reasonably determine the presence of one or two units at 304 Breckenridge Street upper, is presented. Moreover, Plaintiff's excessive force claim arising from Cook's shooting Plaintiff's dog is also colorable given Plaintiff's allegation that Plaintiff's dog was tethered when Defendants entered the apartment despite Cook's deposition testimony to the contrary. *See* Dkt. 33-15 at 40-41 (Plaintiff's "dog was moving forward

. . . [so Cook] made judgment call dog would be a threat . . . and [Cook] shot the dog."). Plaintiff's Fourth Amendment claim cannot therefore be said to lack a good faith basis. As to other available sources for the requested information, Defendants point out that both Garcia and Cook were deposed in August 2017, Dkt. 32-12 at 1-20 (Garcia); Dkt. 33-15 at 1-97 (Cook), thereby affording Plaintiff the opportunity to inquire as to the existence, *i.e.*, 'identification of the requested policies and procedures." This issue was partially addressed by Cook who indicated in his deposition there was no specific department policy regarding "encountering Pitbull type dogs." Dkt. 33-15 at 22. However, Cook did not deny the existence of such policies or procedures with respect to the proper procedure for obtaining search warrants and correctly describing the target premises where more than one residence may be present, or how to generally deal with pets or animals on subject premises while executing a search warrant; however, Plaintiff did not further develop the question. The question of such policies or procedures was not addressed by Plaintiff during Garcia's deposition. Thus, it is uncertain whether a sufficient response to Plaintiff's Interrogatory No. 14 could have been forthcoming through Defendants Garcia's and Cook's deposition testimony; no transcript of Defendant Callahan's deposition, if one was taken, is included in the record. Therefore, it is also uncertain whether another source for the requested information is available. The court thus turns to the question of whether Plaintiff has demonstrated a sufficient need for the requested information.

Plaintiff contends that "[w]ith these policies and procedures, Plaintiff will be able to prove Defendant Cook violated these operating procedures and negligently killed Plaintiff's dog." Dkt. 33 at 12. However, as discussed, *supra*, at 16 n. 6, under New

York law mere violations of municipal departmental policies or those of other entities cannot support a state law negligence claim, and while such a supposed violation is relevant to a qualified immunity defense in opposition to Plaintiff's Fourth Amendment claim, *see, supra* at 9-12, Defendant Cook's alleged lack of any objectively reasonable basis to shoot Plaintiff's dog turns on the question of fact whether the dog was tethered inside the apartment, as Plaintiff alleges, when shot by Cook.  Nevertheless, the objective reasonableness of Cook's decision to shoot Plaintiff's dog in the circumstances presented to Cook at that time would certainly be informed by whether Cook's action comported with any applicable policy or procedure regarding execution of the warrant in such circumstances.  Accordingly, the court finds Plaintiff's request may be based on a compelling need for the requested information.  However, in accordance with the Second Circuit's guidance as stated in *In re The City of New York*, 607 F.2d at 948-49, the court will require Defendants produce, *ex parte*, the documents within the scope of Interrogatory No. 14 for the court's *in camera* review (or an affidavit from a person with personal knowledge of the facts that no such responsive documents exist) within 14 days.  Defendants' counsel shall contact the undersigned's chambers to schedule the required submission.  Following such review, the court will determine whether the documents should be identified and/or produced to Plaintiff in accordance with this Decision and Order.

4.    Sanctions.

Plaintiff, as noted, has requested sanctions pursuant to Fed.R.Civ.P. 37(b)(2)(A) ("Rule 37(b)(2)(A)").  Dkt. 33 at 1.  However, Rule 37(b)(2)(A) authorizes sanctions based on a responding party's failure to comply with a discovery order and Plaintiffs

does not allege the court had previously ordered Defendants to provide any discovery which is subject to Plaintiff's motion. Moreover, pursuant to Fed.R.Civ.P. 37(a)(1), a moving party's expenses in connection with a motion to compel may be granted unless the failure to provide the requested information was substantially justified, *i.e.*, reasonably arguable, *see Hinterberger v. Catholic Health System, Inc.*, 284 F.R.D. 94, 106 (W.D.N.Y. 2012) (granting attorney fees as sanctions where there was no reasonably arguable basis for failing to comply and such noncompliance thus was not substantially justified), or if such an award would be unjust. Here, Defendants raised arguable questions based on lack of relevancy and privileges which required careful judicial consideration. Accordingly, Plaintiff has failed to show Defendants' failure to provide the responsive discovery was not substantially justified, and Plaintiff's request for sanctions should therefore be DENIED.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Dkt. 33) is GRANTED in part, and DENIED in part; Plaintiff's request for sanctions is DENIED. Defendants shall provide the responses to Plaintiff's Interrogatories Nos. 8-12 consistent with this Decision and Order <u>within 30 days</u>; Defendants shall submit documents responsive to Interrogatory No. 14 to the court for *in camera* review <u>within 14 days</u>.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: September 13, 2018
       Buffalo, New York